State of Oregon *v.* Fitzhugh.

STATE OF OREGON, Respondent, *v.* JOHN FITZHUGH and JOHN C. HANNAN, Appellants.

*Appeal from Douglas County.*

| | |
|---|---|
| 2 | 227 |
| 6 | 429 |
| 8 | 30 |
| 8 | 118 |
| 8 | 233 |
| 12 | 156 |
| 12 | 315 |
| 18 | 366 |
| 19 | 71 |
| 19 | 442 |
| 6* | 648 |
| 7* | 312 |
| 23* | 253 |
| 23* | 816 |
| 24* | 406 |
| 2 | 227 |
| 24 | 70 |
| 32* | 1034 |
| 2 | 227 |
| 27 | 266 |
| 29 | 92 |
| 29 | 104 |
| 2 | 227 |
| 33 | 152 |
| 2 | 227 |
| 37 | 89 |
| 2 | 227 |
| 39 | 96 |

1. Challenges to the panel of the grand jury are abolished.

2. The prisoners came into the ball-room in company with others; the district attorney asked of a witness: "State what all or any of these parties did in presence of the prisoners?" Objected to. The *statement does not show what answer was made.* It being possible for a competent answer thereto, this court will presume that the answer was competent and not error.

3. The district attorney asked of another witness: "Did you hear any conversation in presence of the prisoners by persons going with them to Champaign's, as to what they were going for?" Objected to. The record shows no answer. In addition to the last ruling, this court holds that the question was competent for the purpose of showing a conspiracy.

4. Dying declarations cannot be received other than those coming from the deceased person, for whose murder the indictment is found.

5. The court was asked by the defendants' counsel to give this instruction: "That any evidence of a combination between these defendants and others, or of a conspiracy between them and others, is inadmissible for any purpose whatever." The court refused; but gave this: "That a combination having been proved, the acts and declarations of the confederates cannot be taken as evidence of the guilt of these defendants, but may be considered by the jury as showing the intention of these defendants in going to Champaign's house."—*Held*, not erroneous.

6. Defendants' counsel also asked this instruction: "That the declaration of a witness, made at other times, inconsistent with his present testimony, are proper evidence for the consideration of the jury," which the court gave with this explanation: "That such evidence only tended to impeach the character of the witness for truth and veracity, but was not evidence of the facts stated in such declarations."—*Held*, not erroneous.

7. Defendants' counsel, on cross-examination of a State witness, asked him: "Were you present at a public meeting called for the purpose of hanging these prisoners without a trial?" and the court overruled the question.—*Held*, while it might have been legally allowed, yet the answer to this single question would not have shown that witness was unfriendly, and it was a question addressed to the discretion of the court, and is not such error as would reverse this case.

8. The verdict is not inconsistent with the indictment.

9. It is incompetent to assign as error the overruling of a motion for new trial on grounds alleged dehors the record; these were addressed to the discretion of the court.  The Code provides, that "after hearing the appeal the court must give judgment without regard to the decision of questions which were in the discretion of the court below."

10. A recommendation by the jury of the prisoners to the mercy of the court, is not inconsistent with a verdict of guilty.

11. It is not error sufficient.for a reversal, if the court should fail in awarding the full measure of punishment prescribed by law.  It does not work a hardship to defendants.

THIS case was tried at a special term of the Circuit Court for Douglas county, held January 28th, 1867.   The defendants were indicted for the murder of one D. F. Barringer, on which charge they were found guilty of manslaughter.   Counsel for defendants assign these errors as relied upon to reverse this case:

1st.  The Circuit Court erred in overruling the challenge to the array of the jurors, from which the grand jury was drawn at the special term.

2d.  The court erred in overruling the demurrer at the special term.

3d.  The court erred in its rulings on the trial of the case, as appears by the exceptions taken at the time.

4th.  The court erred in refusing to allow the jury to have the pistol of Fitzhugh, and the ball taken from the body of Barringer, and a ball taken from said pistol, with them in the jury room.

5th.  That the verdict is contrary to law, in that it is inconsistent with the indictment.

6th.  The court erred in overruling the motion for a new trial.

7th.  That the verdict is contrary to the evidence.

*Gibbs, Mosher & Chadwick*, for appellants:

The provisions of the statute in relation to the summoning and impanneling of jurors are certain, plain and positive. (*Page* 380, *sections* 930–1–2 *of the Code*.)   The law does not permit the least departure from them.   (1 *Oregon*, 267; 24

*Miss.*, 621; 18 *Johns.*, 212; 36 *Maine*, 128; 4 *Cow.*, 35; 17 *Ohio*, 221, etc.) While the statute abolishes a challenge to the panel, it does not interfere with one to the array. (3 *Bl. Com.*, 359; 9 *Johns.*, 261; 18 *Id.*, 512; 2 *Tidd*, 779.)

That in order to enable the State to prove a combination or conspiracy between the defendants and others, by whose expressions or acts a guilty intent may be shown, it should have been alleged in the indictment. (*Statute* 318, *sec.* 674; *Wharton Am. Cr. Law*, 647; *Roscoe*, 2d *Am. ed.*, 73; 2 *Russell*, 695.)

The state of mind and interest of the witness in respect to the party are always pertinent inquiries. (7 *Conn.*, 66; 16 *Mass.*, 185; 1 *Starkie Ev.*, 135; 9 *Cushing*, 361; 2 *Selden*, 345; 5 *Foster*, 114; 6 *Foster*, 363.)

The jury may take with them to their room the pleadings in the case, and all papers received in evidence, except depositions. (*Code*, 189, *sec.* 202.)

That the pistols, and balls, could, without any danger of undue influence, be admitted into the jury room; equally so with papers. The rejection of evidence tending in any degree to aid the jury in determining a material fact is error. (3 *J. J. Marsh*, 229; 5 *Ohio*, 485; 20 *N. Y.*, 412.)

The judge is required to make his rulings, and instruct the jury in public, and is not to communicate with them otherwise. (*Whar. Am. Law*, *sec.* 3149; 1 *Pick*, 337; 14 *Ohio*, 511.)

Fitzhugh was indicted for murder, and Hannan for aiding and abetting him. There cannot be any accessory before the fact to manslaughter; that being in its character without premeditation. Upon motion for new trial, that the jury were permitted to use a copy of the Statutes, &c., in their room. (*G. & W. New Trials*, 70; 4 *Park Cr.*, 256, 319, 619.)

While the jury were in deliberation a meeting was held in their hearing at which the minister spoke of defendants as murderers. (12 *Pick.*, 496; 10 *Ferg.*, 241; 13 *Mass.*, 218; 2 *N. H.*, 474.)

The verdict is improper because accompanied with a recommendation to mercy.   (2 *Yerger*, 60 ;  *Code, pages* 191, 469.)

*J. F. Watson, District Attorney*, and

*W. R. Willis, Esq.*, for State.

Irregularities in summoning, or neglect to summon the panel of jurors, will constitute no ground for new trial unless injury is affirmatively shown.   (1 *Arch. Cr. Law*, 621–2 ;  2 *Graham & Waterman*, 153.

A party cannot assign as error in the Supreme Court the same grounds on which a motion for a new trial is made in the court below.   (1 *Ogn.*, 163 ;  *Code*, 482.)

In a common indictment for murder, charging no combination, evidence can be offered by the State that the alleged killing took place in the prosecution of an unlawful undertaking by several, not all charged in indictment.

After proof of such combination the declaration and acts of persons engaged in it, but not indicted, may be given to show the nature and design of the combination, when such acts and declarations were made in the presence and hearing of defendants.   (*Whar. Am. Law, sections* 702–3 ;  1 *Archbold*, 409.)

It must appear, from the bill of exceptions, that the complaining party is injured by the admission or exclusion of evidence.

Statements of a witness conflicting with his testimony may be given to impeach him, but not as evidence of the facts as stated.

BOISE, J.   The first and second assignments of error are to the same questions, and are treated together by the counsel for the prisoners in their argument.   The demurrer assigned, as grounds therefor, 1st, That the grand jury, by whom the indictment was found, had no authority to inquire into the crime charged, because the sheriff failed to summon

the panel of the jurors furnished him by the clerk, excepting ten upon such panel. 2d, That the grand jury, by which the indictment was found, had no legal authority to inquire into the crime charged, because three of the grand jurors, to wit: D. C. Underwood, N. Imbler and John McCullough, who were drawn, sworn, and found the indictment, were not summoned by the sheriff, according to the statute in such cases made and provided.

These matters are urged as grounds of challenge to the array of the jury. We think at common law such irregularities would be embraced under the head of challenges to the panel of the jury, and are therefore abolished by our statute, page 184, section 179, where it is provided, "no challenge shall be made or allowed to the panel; a challenge is an objection to a particular juror."

We think the provision extends to the grand jury as well as to the trial jury, since both are drawn in the same list, and the grand jury selected therefrom. We think, also, if a party suffers the grand jury to be impanneled and sworn at a special term called to try his case, making no objection thereto at the time, that he cannot, after an indictment is found against him by such grand jury, avail himself of the irregularities here alleged, as a ground of demurrer to the indictment. He would at common law have been deemed to have waived these objections. We think, therefore, that these objections to the formation of the grand jury cannot avail the prisoners in obtaining a reversal of the judgment below.

The third assignment of error includes the exceptions taken on the trial of the case.

It seems from the report of the case, that the killing took place at the house of one Champaign, in the presence of a number of persons, who were assembled at a ball; also, that the prisoners came there on that occasion with a number of persons. "The district attorney called as a witness, George Benneth, who said among other things, that these prisoners

came into the ball-room at Champaign's in company with Solomon Culver, Robert Forbes, and Abraham Crow. The district attorney then asked the witness, "State what all or any of these parties did in the presence of the prisoners?" To which question the defendant's counsel objected, and the court overruled the objection, and this is urged as error. This question is an inquiry as to the conduct of this whole party of persons, including the prisoners. The bill of exceptions does not show what answer was made to this question. Suppose the answer was, that these prisoners, together with the other parties named by the witness, drew their weapons and commenced firing on the deceased, and killed him; then it would have been competent. Suppose the answer had been that those persons, named as accompanying the prisoners, had then declared that they came all together, including the prisoners, for the purpose of assaulting and beating certain of the persons assembled at the ball, it would have been competent for the witness to have given such declarations in evidence; and such an answer would have been responsive to the question. The court, not being advised what the evidence was, cannot presume that it was incompetent, when competent evidence might have been elicited by the question.

Another witness, Henry Colton, produced by the prosecution, was asked by the district attorney: "Did you hear any conversation in presence of the prisoners by persons going with them to Champaign's, as to what they were going for?" The question was objected to by the counsel for the prisoners, and the objection overruled by the court, and this is also assigned as error. It does not appear from the record what answer was given to this question, or, that the witness heard any such conversation as referred to in the question. It does not, therefore, appear that the exception was material so as to affect the substantial rights of the prisoners. The answer to the question should have been given so as to show that it was material and might have affected the rights of the defendants. We think the question

was proper; it was intended to inquire if there was any conspiracy between the prisoners and other parties to commit this crime, and, if that was the case, it would be competent to show it. Had the witness answered, that he did hear conversation as to the purpose for which they were going, he could have stated any threats he heard made in the presence of the prisoners. Suppose that Crow, one of the persons referred to, had said to the prisoners, that he was intending to do acts of violence when he should have arrived at Champaign's; that he was armed for that purpose; that prisoners did not object, and were armed also, and went on with him, and encouraged him by their presence, this would have been competent evidence to go to the jury, as to the intent of the prisoners.

Another witness was asked by the district attorney to state what Robert Forbes, one of the persons who came with the prisoners, said to Barringer, in presence of the prisoners, as to what the whole party came for; we think this was also competent, for the same reasons as stated above. It appears that Forbes was wounded in this affray, and died on the next day. The defense produced a witness who said he was at Champaign's the next day after the affray; that he saw Forbes; that Forbes was dying; Forbes said, "This will be my last day here." Counsel asked this question: "State what Forbes said, at that time, as to what occurred at Champaign's, at the affray, and as to the manner of his death." The evidence sought by this question were the dying declarations of Forbes, as to the manner of his death, which was caused by a shot fired in the affray in which Barringer was killed. We do not think such declarations can be received, except as coming from the *deceased* person for whose murder the prisoners are indicted; and these defendants are indicted for killing Barringer, and not Forbes; therefore we think the evidence was properly excluded.

After the evidence was closed, the counsel for the prisoners asked the court to instruct the jury "that any evidence of a

combination between these defendants and others, or of a conspiracy between them and others, is inadmissible for any purpose whatever." This the court refused to do, but told the jury " that a combination having been proved, the acts and declarations of the confederates cannot be taken as evidence of the guilt of these defendants, but may be considered by the jury as showing the intention of these defendants in going to Champaign's house;" to which instruction defendants' counsel excepted. We do not think this instruction was erroneous; persons can confederate together to commit any crime, and when evidence has been produced showing such concert of action, it is competent to give in evidence the acts and declarations of co-conspirators, done and said in the prosecution of the common intent and in the perpetration of the crime. If two or more men agree to commit burglary, and are overheard on their way to the house which they intend to break, openly stating their plans to each other, such declarations by one of the confederates can be given in evidence against the others, on their separate trial, without any conspiracy having been charged in the indictment.

Prisoners' counsel also asked the court to instruct the jury thus: "That the declarations of a witness made at other times, inconsistent with his present testimony, are proper evidence for the consideration of the jury." Which charge the court gave, but explained to the jury that such evidence only tended to impeach the character of the witness for truth and veracity, but was not evidence of the facts stated in such declarations, to which instruction counsel for defendants excepted. We think this instruction correct; for the declaration of a witness, not on oath, is mere hearsay evidence, and is proved by a witness who heard it, for the purpose of showing that the witness is either mistaken as to his evidence on oath or has been guilty of falsehood when not on oath, and is, therefore, not reliable. If the rule claimed by defendants' counsel were to prevail, then the declarations of false and irresponsible persons, made in casual and careless con-

versations, when not under the sanction of an oath, would be evidence of facts which the same persons deny under oath. We think no such rule prevails.

There is another exception relied upon by the counsel for the prisoners. On the cross-examination of John Bazzill, a witness for the prosecution, defendants' counsel asked him this question: "Were you present at a public meeting called for the purpose of hanging these defendants without a trial?" to which the district attorney objected, and the court sustained the objection, and defendants' counsel excepted. We think the question might have been legally allowed by the court, as tending to show that the witness might have been hostile to the prisoners; it might have been followed by another question, whether he participated in such meeting, and advised violence to the prisoners, thereby showing a mind unfriendly to them; but, had he answered the question in the affirmative, it would not have shown that he was unfriendly, and this would have been the answer most favorable to the prisoners; and the rejection of the question by the court for irrelevancy would not be a ground of error to warrant a reversal of the judgment. It was one of those questions which, we think, was subject to the discretion of the court.

Another assignment of error is that the verdict is inconsistent with the indictment. The indictment charges both prisoners with murder, and their crimes are equal in degree. If one man strikes the fatal blow, and another is present assisting him to do it, he is as much a principal in the crime as is he who strikes the blow; and both may be found guilty of manslaughter, under the same indictment.

It is also assigned as error that the court overruled the motion for a new trial, which was founded on affidavits, disclosing certain alleged irregularities in the conduct of the jury after they had retired; and, also on errors occurring during the trial. As to these matters which relate to errors occurring during the progress of the trial, and excepted to at the time, we

have already considered them.  As to those matters which were contained in the affidavits filed in support of the motion for a new trial, they were questions of fact, and were addressed to the sound discretion of the Circuit Court, and are therefore not the subject of review here.  It is incompetent to assign as error the overruling of a motion for a new trial on grounds alleged dehors the record; previous to the present Code such grounds were addressed to the discretion of the court, and our Statute now provides that "after hearing the appeal the court must give judgment without regard to the decision of questions, which were in the discretion of the court below, or technical errors, etc." (*Code, page* 482, *section* 240, *also section* 246; *Newby*, v. *Territory of Oregon*, 1 *Ogn.*, 163; *Cline* v. *Broy*, 1 *Ogn.*, 89.)

It is objected, that the recommendation by the jury of the prisoners to the mercy of the court was error.  We think there is no good reason for the belief that this recommendation was a condition to the finding the prisoners guilty; the parties were present and could have polled the jury; and we think this is not a ground of error in this court.

The last assignment of error is that the sentence is not according to the statute, in this, that the court did not sentence the prisoners to pay a fine, as well as to be imprisoned.

In this case the court omitted a part of the punishment, which was making their punishment lighter than the law required; of this they cannot complain, for it does them no injury, and does not affect to their prejudice a substantial right.  In the case of *Howell* v. *State*, the prisoner was sentenced to a punishment greater than the law awarded, and it was for that reason that this court reversed the judgment in that case.

Judgment is affirmed.