Argued June 7, reversed October 10, 1956

## STATE OF OREGON *v.* WATTS

301 P. 2d 1035

*Dale W. Pierson,* Salem, argued the cause for appellant. With him on the brief was J. William Stortz, Salem.

*Kenneth E. Brown,* District Attorney, Salem, argued the cause and filed a brief for respondent.

Before WARNER, Chief Justice, and ROSSMAN, LUSK and PERRY, Justices.

PERRY, J.

The defendant Daniel D. Watts was convicted of the rape of his 14 year old daughter, and appeals.

The facts relied upon for a conviction are: (1) that the father was alone with his daughter in the family home for a period of thirty or forty minutes while the mother and other children were absent; (2) that the daughter made an extrajudicial statement that the crime did occur during this interval; (3) that following the defendant's arrest he made oral confession of the crime; and (4) that a medical examina-

tion disclosed that the child's vaginal opening was enlarged.

The daughter upon the witness stand categorically denied ever having had sexual intercourse with the defendant, and the defendant repudiated his oral confession.

The defendant sets forth several assignments of error, but the primary question to be considered is whether or not there is sufficient evidence to sustain a conviction. ORS 136.540 provides:

"A confession of a defendant, whether in the course of judicial proceedings or to a private person, cannot be given in evidence against him when it was made under the influence of fear produced by threats; *nor is a confession only sufficient to warrant his conviction without some other proof that the crime has been committed.*" (Italics added)

■ Under this statute it is necessary that the *corpus delicti* be proven *aliunde* the confession; that is, the evidence must show the commission of the crime independent of the declarations of the accused. *State v. Henderson,* 182 Or 147, 190, 184P2d 392, 186 P2d 519. The reason for this general rule of law, now statutory, is set forth in *State v. Howard,* 102 Or 431, 203 P 311. It is, therefore, clear that, while the confession may be used to show who perpetrated a crime, it must first be legally shown that a crime was committed.

■ In this case (omitting the matter of the daughter's age) it was incumbent upon the state to prove, independent of the confession, that the child had been penetrated by a male person.

■ It is well-established that direct evidence is not required to prove the *corpus delicti,* but that circum-

stantial evidence is sufficient. In *State v. Williams,* 46 Or 287, 297, 80 P 655, we said:

" * * * No universal and unvariable rule can be laid down in regard to the proof of the corpus delicti. Each case depends upon its own peculiar circumstances. The body of the crime may be proved by the best evidence which is capable of being adduced, if it is sufficient for the purpose. Such an amount of accompanying or relative facts, whether direct or circumstantial, must be produced as establish the fact beyond a moral certainty, and to the exclusion of every other reasonable hypothesis."

In *State v. Weston,* 102 Or 102, 119, 201 P 1083, speaking of the quality of the circumstantial evidence necessary to establish proof of the *corpus delicti,* we said:

"In this state, direct evidence to establish either of these elements [that a certain result has been produced, and that someone is criminally responsible] is not required, but where circumstantial evidence is relied upon it must be of the most cogent and convincing nature. It is the settled law of Oregon that the *corpus delicti* taken as a whole may be shown by any evidence which satisfied the jury beyond a reasonable doubt, whether it be direct or indirect. But this is qualified and limited by the rule that the defendant's confession taken alone, and without corroborating proof of the *corpus delicti,* is not sufficient to support a conviction.
* * * * *

"The trial of such a case cannot be bound by an inflexible rule relating to the proof of the *corpus delicti.* The case at bar depends upon its own peculiar facts and *so long as the corpus delicti is proved by clear, unequivocal, cogent and convincing evidence, the law is satisfied.*" (Italics added)

And again in *State v. Dennis,* 177 Or 73, 77, 159 P2d 838, 161 P2d 670:

" * * * The fact that a crime has been committed (the corpus delicti), and that it was done

by the defendant, may be lawfully established by circumstantial evidence alone. But such evidence must be satisfactory. Mere suspicion, or mere probability of guilt, is insufficient. The evidence must be of the most cogent and convincing nature. Each fact necessary to establish guilt must be proved to the satisfaction of the jury and beyond reasonable doubt. The evidence upon which the State relies for conviction must not merely coincide with, render probable, and be consistent with, the guilt of the accused, but it must be inconsistent with any reasonable theory of his innocence and incapable of explanation upon any other rational hypothesis than that of guilt. State v. Williams, 46 Or. 287, 80 P. 655; State v. Weston, 102 Or. 102, 201 P. 1083; Oregon Box & Mfg. Co. v. Jones Lumber Co., 117 Or. 411, 244 P. 313; State v. Clark, 99 Or. 629, 196 P. 360; and State v. Evans, 143 Or. 603, 22 P. (2d) 496.''

■ We are not faced with the same question as confronted the jury. We do not weigh the evidence; our duty is to determine whether or not there was sufficient circumstantial evidence, clear, cogent, and convincing, from which the jury in the performance of its legal duties could deduce the commission of a crime.

■ When the daughter, upon the witness stand, categorically denied ever having had intercourse with the defendant, her prior statements to the contrary were of no probative force whatsoever, and were relevant only for purposes of impeachment. *State v. Jarvis,* 18 Or 360, 23 P 251.

■ We are left then only with proof of defendant's opportunity to commit the crime, and proof that at some time and in some manner the vaginal opening of the child was enlarged. Generally " * * * Evidence of mere opportunity for sexual indulgence, in the absence of proof of a lascivious inclination * * *, is

not sufficient circumstance to warrant an inference of the commission of such offense." *State v. Welch,* 41 Or 35, 38, 68 P 808.

In *Jenkins v. Jenkins,* 103 Or 208, 213, 204 P 165, we cited with approval this rule from 3 Abbott's Trial Evidence (3 ed) 2034:

" 'Circumstances susceptible of a reasonable interpretation consistent with innocence and which do not lead to guilt by a fair inference as a necessary conclusion are insufficient.' "

We again approved this rule in *Parsons v. Parsons,* 197 Or 420, 253 P2d 914.

■ While the latter cases stating the rule are civil, they deal with an act criminal in nature, and are analogous to the question before us. The rule there stated applies with even greater force in a criminal case where the proof must reach the quality of being clear, cogent and convincing to prove the *corpus delicti.* To hold that a criminal inference could be deduced from the fact that a parent was alone with his child would be contrary to sound reasoning, and contrary to the spirit of ORS 41.330, which provides:

"An inference must be founded on:

"(1) A fact legally proved; and,
"(2) Such a deduction from that fact as is warranted by a consideration of the usual propensities or passions of men, the particular propensities or passions of the person whose act is in question, the course of business, or the course of nature."

And to hold that a criminal inference could be drawn simply from the fact that a parent is alone with his child in the home would be unthinkable. The home is established for the care, nurture and protection of

the young; it is the normal abode of parent and child; the base of true filial relationships where love and affection, each for the other, normally abide; and the only reasonable deduction, without evidence to the contrary, would be that the child was in a place of loving protection.

■ The medical testimony relied upon by the state to establish male penetration of the vaginal orifice of the child is as follows:

"Q At that time, Doctor, after you had examined her, did you form an opinion as to whether or not she had had sexual intercourse?
\* \* \* \* \*

"A I formed the opinion that the young lady had had sexual intercourse.
\* \* \* \* \*

"Q Doctor, could you tell us briefly on what you base your opinion?
"A I based my opinion that the young lady had had intercourse on the fact that the vaginal opening had been dilated and was of larger size than one would expect to find in an individual who had not had sexual relations.

"Q Isn't it a fact that that condition could have been caused by self-manipulation or exercise or some injury or abnormality, other than intercourse?
"A That's correct.
\* \* \* \* \*

"Q It could have been caused by something other than sexual intercourse?
"A Yes, sir.

"Q You are not prepared—you can't say then with absolute certainty that she has had sexual intercourse?
"A That's correct.
\* \* \* \* \*

"Q Well, in other words, then, Doctor, it could have been caused by several things, within the realm of speculation, at least, but in your opinion it was caused by intercourse?

"A In my opinion, yes, it was caused by intercourse, but I cannot rule out the fact that some other type of object may have, at some time, been introduced into her vagina."

\* \* \* \* \*

"Q In your opinion, Doctor—do you have an opinion as to whether or not this young lady has indulged in the act of intercourse?

"A There was no evidence of intercourse.

\* \* \* \* \*

"Q Can the size of the vaginal opening be explained in any other way than the admission of a male organ?

"A Very definitely.

"Q In how many ways?

"A Several. Self-manipulation, or fingertip insertion, round body insertion, and of course athletic injuries, I assume; but self-manipulation is the commonest.

\* \* \* \* \*

"Q Now, Doctor, \* \* \* would it be possible, in your opinion, that the vaginal opening of this young lady, Neveda Watts, could be the size that you found, as a result of a natural state?

"A Yes, very possible.

\* \* \* \* \*

"Q \* \* \* You said there had been no evidence of intercourse. What did you mean?

"A No sperm found.

"Q Would there have been sperm found, Doctor, if contraceptives in the nature of a rubber had been used?

"A No.

\* \* \* \* \*

"Q Well, Doctor, what is the most common cause of dilation, enlargement of the vaginal opening?

"A The most common cause is probably intercourse, but it is not the only cause.

\* \* \* \* \*

"Q So that there is always a possibility of some outside agency or some outside cause—causing this to be enlarged?

"A That's right.

"Q But by far the most likely explanation is that it was caused by intercourse?

"A That's right.

\* \* \* \* \*

"Q Doctor, Mr. Brown just made the statement for you to answer to the general effect that the most obvious reason for the size of the vaginal opening of this young lady was the act of intercourse, and I think you stated before that you could not tell with any degree of positiveness whether the size was caused by intercourse or whether the size was caused by a natural condition; is that right?

"A That's right.

"Q Or caused by the insertion of some foreign object. Is that still your testimony?

"A That's right."

Such testimony, at best, can be taken to establish the fact that there was a dilation or enlargement of the vaginal opening of the child. There was a possibility that the child may or may not have had sexual intercourse at some time. There was no indication of hysteria; there were no bruises, lacerations, or other proof of injuries normally brought about by sexual activity found to be corroborative in other cases. *State v. Mitchell*, 68 Iowa 116, 26 NW 44; *State v. Leavitt*, 44 Idaho 739, 260 P 164.

In the case of *Messel v. State,* 176 Ind 214, 217, 95 NE 565, upon which the plaintiff relies, the Court said:

" * * * With the fact proved beyond a reasonable doubt that she had been sexually used * * * the *corpus delicti* would be proved, * * *."

In that case, the record shows that the testimony of two doctors who were witnesses for the state established beyond a reasonable doubt that the child had had sexual intercourse.

In *State v. McCord,* 237 Mo 242, 246, 140 SW 885, a prosecution for rape committed upon a small child, the court held that the expert testimony, plus the direct testimony of the defendant that, in his opinion, the child had been ravished, "coupled with the inherent improbability that her injuries could have been otherwise produced," was sufficient proof of the *corpus delicti.*

■ The facts in the instant case do not allow such a conclusion. We cannot say, as a matter of law, that the expert opinion-evidence presented here, equivocal in essence and conjectural in part, was sufficient proof of the *corpus delicti.* Such circumstantial evidence must be clear, unequivocal, cogent and convincing. Because of the obvious tendency of a layman sitting as a juror to give primary consideration to the confession of the defendant, notwithstanding the admonitions of the trial judge, it is the duty of the courts to guard against this probability, especially in a case such as this where a man is tried for a crime so heinous and base that it inflames the minds of even the most prudent, and emotion rather than reason rules.

Reversed.