Argued September 24, affirmed October 19, petition for rehearing
stricken as not timely filed November 23, petition for
review denied December 14, 1971

STATE OF OREGON, *Respondent, v.* NATHANIEL
FENNELL, JR., *Appellant.*
489 P2d 964

*Charles R. Harvey,* Portland, argued the cause and filed the brief for appellant.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

LANGTRY, J.

Defendant was convicted of second degree arson and in this appeal alleges two errors. First, that testimony of police officers that witnesses had selected defendant as a suspect after identifying defendant's picture from a group of pictures immediately after the fire was hearsay and inadmissible. Second, that testimony of a witness who testified before a grand jury when it returned a previous indictment which was dismissed and who did not testify when the instant indictment was returned by another grand jury should not have been received because the name of the witness does not appear on the second indictment.

On the night of June 6, 1970, at about 10:30 p.m. the Grandma's Cookie factory in Portland burned. The fire obviously was set. Defendant, by his admission and independent testimony, was in the area when the fire started. Two boys in the company of other children were walking home from a Rose Festival parade and passing the factory. Both testified that they saw a man, wearing clothes similar to those defendant wore that night, kneeling by a telephone pole on the sidewalk adjacent to the factory, and one stated that he saw on the sidewalk by the man a beer bottle with a cotton wick in it. Immediately after they passed the factory

the fire erupted. One boy testified that he heard a window crash and saw the same person whom he had seen kneeling on the sidewalk running away. Each of the boys testified that he could not identify the defendant at the time of trial. Each stated that immediately after the fire, officers had shown him pictures from which he had selected a picture of the defendant as being the person he had seen kneeling on the sidewalk. One of them positively stated that the picture which he selected was of the same man he had seen by the telephone pole. The other was less positive in his identification.

Defendant's counsel did not cross-examine these witnesses, although he had the opportunity to do so. The officers who showed the pictures testified that they had a group of pictures sent out from police department files and that each of the boys was placed alone in a police car on a service station lot near the scene of the fire and allowed to look through the group of pictures. They testified one of them quickly settled upon defendant's picture as that of the suspect and the other selected it with less positiveness. All of this testimony was objected to by defendant's counsel as hearsay.

One Hawkins was awaiting sentence for participation in the same crime. The district attorney called him as a witness and he claimed his privilege against testifying under the Fifth Amendment to the United States Constitution. Thereupon, the prosecutor offered a transcript of Hawkins' testimony about the crime before a grand jury and it was received under a stipulation of counsel and read to the jury. In this testimony Hawkins in detail described this defendant's activities with reference to setting the fire. Nu-

merous details of his description coincided with the testimony which the boys had already given concerning the activities of the man they had observed near the telephone pole. When defendant's time came to put on his case, Hawkins had changed his mind and appeared as a defendant's witness, waiving his Fifth Amendment rights. In this testimony he stated that he had perjured himself at the grand jury hearing and that defendant had nothing to do with the fire. He said he had made up in his mind the details about which he had testified to the grand jury.

■ ■ A line of cases in Oregon holds that extrajudicial identifications may not be received in evidence. Typical of these cases are *State of Oregon v. Lanegan,* 192 Or 691, 236 P2d 438 (1951); *State v. Evans,* 98 Or 214, 192 P 1062, 193 P 927 (1920); and *State v. Houghton,* 43 Or 125, 71 P 982 (1903). The ordinary case where the rule is applied presents a situation where the witness identifies the defendant in the courtroom and the extrajudicial identification is offered to bolster the witness's courtroom identification. In some cases evidence of the extrajudicial identification has been received after cross-examination of the state's witness has sought to impeach the in-court identification. *State v. Nunes,* 251 Or 49, 444 P2d 542 (1968); *State v. Wong Wen Teung,* 99 Or 95, 195 P 349 (1921). We find no Oregon case where the facts are in point with those of the case at bar.

The rule of law applied by some courts and not others which excludes such testimony is severely criticized in 4 Wigmore, Evidence 208, § 1130 (3d ed 1940). This criticism is quoted *infra* in a quotation from *State v. Wilson,* 38 Wash2d 593, 231 P2d 288 (1951). The divergent and confusing holdings from various

jurisdictions are detailed in an Annotation, 71 ALR2d 449 (1960).

In the instant case the trial court considered *People v. Gould,* 54 Cal2d 621, 626, 7 Cal Rptr 273, 354 P2d 865 (1960). In that opinion Mr. Justice Traynor, for the court, said:

"Evidence of an extrajudicial identification is admissible, not only to corroborate an identification made at the trial [citing cases], but as independent evidence of identity. Unlike other testimony that cannot be corroborated by proof of prior consistent statements unless it is first impeached [citing cases], evidence of an extrajudicial identification is admitted regardless of whether the testimonial identification is impeached, because the earlier identification has greater probative value than an identification made in the courtroom after the suggestions of others and the circumstances of the trial may have intervened to create a fancied recognition in the witness' mind. [Citing cases.] The failure of the witness to repeat the extrajudicial identification in court does not destroy its probative value, for such failure may be explained by loss of memory or other circumstances. The extrajudicial identification tends to connect the defendant with the crime, and the principal danger of admitting hearsay evidence is not present since the witness is available at the trial for cross-examination [citing cases]."

At p 631, the opinion states:

"* * * [E]xtrajudicial identification that cannot be confirmed by an identification at the trial is insufficient to sustain a conviction in the absence of other evidence tending to connect the defendant with the crime * * *."

In the case at bar the trial judge, referring to *People v. Gould,* supra, said:

"* * * This follows * * * what I consider to

be the better statement of the law * * * in these
cases that we see * * * involving crimes of this
nature, there are tremendous pressures put on wit-
nesses that we are all aware of, and that they
sometimes are absolutely coerced from identifica-
tion at the time of trial, sometimes to the extent of
being threatened with their very lives; that the
identification that takes place immediately after
the event, before this pressure can come in to
these people that witness a crime, is reliable and
trustworthy; and * * * necessary."

As already noted, the facts in the case at bar are not
factually in point with the Oregon cases upon which
defendant relies. There is indication that the rule, even
in the ordinary case, may no longer be applied. In
*State v. Randolph,* 251 Or 45, 444 P2d 545 (1968), the
court noted that the testimony of a detective about an
extrajudicial description by the victim of the defend-
ant was hearsay and inadmissible. Then the court said:

"As a part of its argument the state urges in
effect that we adopt Rule 63(1) of the proposed
Uniform Evidence Act.① In two previous cases this
court has indicated tacit approval of such a rule.
*State v. Opie,* 1946, 179 Or 187, 170 P2d 736; *State
v. Herrera,* 1963, 236 Or 1, 7, 8, 386 P2d 448. How-
ever, in this case it is not necessary to decide if the
proposed Uniform Rule should be adopted as a
fixed rule of evidence because we have determined
that the evidence, if error, was not prejudicial.

"① Evidence of a statement which is made other
than by a witness while testifying at the hearing
offered to prove the truth of the matter stated is
hearsay evidence and inadmissible except:

"(1) Previous Statements of Persons Present
and Subject to Cross Examination. A statement
previously made by a person who is present at the
hearing and available for cross examination with
respect to the statement and its subject matter, pro-

vided the statement would be admissible if made by declarant while testifying as a witness."

The reason that we have said the facts here are not in point with the ordinary Oregon case where the rule has been applied is that the witnesses here testified that they could not make an identification at the time of trial. They were not asked whether they could pick out the pictures which they had previously selected, but the prosecutor in colloquy with the court and opposing counsel, *in camera,* assured the court that he had asked the witnesses this question and that they had indicated that they would be unable to select the pictures. No reason except passage of time appears in the record for the loss of memory. In the Annotation in 71 ALR2d, cited supra, it is said that:

"Where the person who made the extrajudicial identification fails to identify the accused at the trial, the admission of the testimony of a third person as to the fact of such prior identification may depend upon whether the prosecuting attorney was surprised * * *. In other cases, however, the testimony has been held, *under particular circumstances,* to be admissible." (Emphasis supplied.) 71 ALR2d at 491.

Among the cases cited for the last sentence in the above quotation is *State v. Wilson,* 38 Wash2d 593, supra. In that case the court said at 617-18:

"* * * Wigmore points out that identification of an accused in the courtroom (judicial identification) is of little testimonial force, as, after all that has intervened, it would seldom happen that the witness would not have come to believe in the accused's identity; and that it is entirely proper to corroborate the witness by proving that at a prior time, when suggestions of others could not have intervened to create a fancied recognition in the mind of the witness, he had recognized and de-

clared the present accused to be the guilty person (an extrajudicial identification). He concludes:

'This is a simple dictate of common sense, and was never doubted in orthodox practice. That some modern Courts are on record for rejecting such evidence is a telling illustration of the power of a technical rule of thumb to paralyze the judicial nerves of natural reasoning.' 4 Wigmore on Evidence (3d ed.) 210, § 1130.

"It should be noted that this case does not fall within the usual pattern of extrajudicial identification. The testimony of Chief Diamond was not to corroborate that of Mrs. Nelson, who made no positive identification, but to *complement* it. *Taken together,* they told the jury that Mrs. Nelson selected the man in each line-up at the jail who most nearly resembled one of the kidnapers in physical appearance, and that the men she selected were Turman and Utah Wilson. This is testimony of eye and ear witnesses, and primary evidence as to what happened at a jail 'show up.' * * * *It is material; it is relevant;* and if it constitutes an extrajudicial identification as that term is ordinarily used, we choose to align ourselves with those courts which hold that such identifications are admissible * * *."

(Emphasis supplied.)

In the case at bar we view the testimony of the boys and of the police officers in the way the Washington Supreme Court indicated it did the challenged testimony in *Wilson.* It took the testimony of the boys and the police officers together to be complete. The boys and the police officers were both present in court and available for cross-examination. The defendant was confronted by the witnesses against him. The main reasons for excluding hearsay is that the defendant loses the valuable right of cross-examination and his right to be confronted by the witnesses. *See*

*State v. Opie,* 179 Or 187, 207, 170 P2d 736 (1946). The reasons did not apply in the case at bar. Defendant's counsel contends that he relied upon Oregon cases such as *Houghton* and *Wong Wen Teung* and prepared his defense accordingly. Therefore, he did not cross-examine the boys when he had the opportunity to do so. However, defense counsel made no move to recall the boys for cross-examination when the trial court allowed the officer's testimony to come in. We can only believe that defendant did not want to cross-examine the boys. The trial's purpose is to search for the truth. Defendant's rights are to be accorded him, but no purpose is served by playing a tactical game for technicality's sake.

In *Susewind v. Lever,* 37 Or 365, 61 P 644 (1900), the court was telling why the memorandum itself becomes admissible where a person is unable because of loss of memory to testify about previously known facts and also cannot testify from present memory that a memorandum that he made at the time of the facts was correct. The court said:

> "* * * Where, however, the memory of the witness is not refreshed by an examination of the writing he has made, so as to enable him to state the particulars from recollection and he testifies that he knew when the memorandum was made that it correctly stated the facts, it then becomes admissible, *because it is the best evidence procurable under the circumstances * * *.*" (Emphasis supplied.) 37 Or at 368.

The reasoning is applicable to the instant state of facts. There was ample corroboration in other evidence connecting defendant with the crime.

■ ■ We find no support in precedent or reason for defendant's contention that in a situation such

as occurred here, where a first indictment was dismissed and a second one found, that a witness whose name was on the first but not on the second indictment cannot be called as a witness by the prosecution. The statute which requires the names to be appended to the indictment does not require it. ORS 132.580. *State v. Andrews*, 35 Or 388, 58 P 765 (1899), relied upon by the defendant, carefully distinguishes the situation where the same grand jury returns a second indictment. It was not the same grand jury which returned the second indictment in the case at bar. The grand jury which returned the second indictment appended the names of the witnesses who appeared before it.

Affirmed.