Argued March 27, affirmed April 29, petition for reconsideration
denied June 6, petition for review allowed June 11, 1974

## STATE OF OREGON, *Respondent, v.* TONY ESTES DERRYBERRY (No. C 73-03-1021 Cr), *Appellant.*
521 P2d 1065

*John K. Hoover,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Jim G. Russell,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

LANGTRY, J.

Defendant appeals from a jury trial conviction of first degree theft. ORS 164.055. The sole question on appeal is whether the trial court erred in instructing that evidence of a prior inconsistent statement of a witness who had testified in defendant's favor could

be considered by the jury as evidence of impeachment and also *to determine the truth of the matter asserted in the out-of-court declaration.*

The fact issue at trial was whether defendant knew property found in his possession was stolen. Burglars completely emptied the home of Mary Young of furnishings on January 25, 1973. On February 8, 1973 Joel Clark was found and arrested on a warrant at defendant's trailer home for a parole violation. The arresting officers became suspicious that the furniture they noticed in defendant's trailer was stolen. After further investigation they returned with a warrant and seized about one-third of the items that had been stolen from Mary Young's home.

Joel Clark was called as a witness by the state. He testified that defendant told him he had bought or traded for the furniture. Two police officers then testified that Clark previously had told them that he had been at the defendant's home January 26, 1973, and that defendant had shown him the furniture and had said he had stolen it the previous day. Clark was recalled to the stand and admitted having talked to the officers but denied having said defendant told him the property was stolen. He was questioned and cross-examined in detail as to his motives for testifying at trial in behalf of defendant and for possibly incriminating defendant in his conversation with the police.

The state in its case-in-chief established that defendant had told the manager of the trailer court that the stolen furniture had been given to him by his father. Police testified that upon his arrest defendant, after waiving his *Miranda* rights (*Miranda v. Arizona*, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966)), told them he bought the furniture from a

young, black man named Robert Young. Witnesses for defendant testified they had been present when a young, white man named Robert Young sold defendant the furniture.

Throughout the course of the trial the prosecution took the position that the evidence of Clark's out-of-court conversation was offered for impeachment purposes only and defendant's counsel took all appropriate objections and exceptions to its use. The court instructed the jury:

> "Testimony regarding the oral statements [made out of court] of persons are to be viewed with caution for the following reasons: * * *
>
> "Testimony has been introduced concerning statements allegedly made by the witness, Joel Clark, regarding statements made by the defendant to him concerning the source of the property which defendant is charged with theft by concealing.
>
> "You may, but you are not required to, consider these statements, if you find that they were made [,] for two purposes:
>
> "First, for purposes of determining the truth or falsity of the testimony of the witness Clark. Second, for purposes of determining whether or not the defendant himself made such statements to Joel Clark."

Thereafter, out of the presence of the jury the court stated to defense counsel that it had purposely given the dual instruction in view of Oregon decisions with reference to Rule 63 (1) of Uniform Rules of Evidence (Rule 63 (1) is quoted in *State v. Fennell,* infra), and specifically cited *State v. Fennell,* 7 Or App 256, 489 P2d 964, Sup Ct *review denied* (1971).

In *Fennell* we held that evidence of an out-of-court identification was admissible under an excep-

tion to the hearsay rule. A passage of that opinion not relied upon in reaching the result states:

> "* * * In *State v. Randolph,* 251 Or 45, 444 P2d 545 (1968), the court noted that the testimony of a detective about an extrajudicial description by the victim of the defendant was hearsay and inadmissible. Then the court said:

> > " 'As a part of its argument the state urges in effect that we adopt Rule 63 (1) of the proposed Uniform Evidence Act.[①] In two previous cases this court has indicated tacit approval of such a rule. *State v. Opie,* 1946, 179 Or 187, 170 P2d 736; *State v. Herrera,* 1963, 236 Or 1, 7, 8, 386 P2d 448. However, in this case it is not necessary to decide if the proposed Uniform Rule should be adopted as a fixed rule of evidence because we have determined that the evidence, if error, was not prejudicial.

> > " '[①] Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except:

> > " '(1) Previous Statements of Persons Present and Subject to Cross Examination. A statement previously made by a person who is present at the hearing and available for cross examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness.' " 7 Or App at 261-62.

Several weeks after we decided *Fennell,* in *State v. Waites,* 7 Or App 137, 490 P2d 188 (1971), we considered the admissibility of a prior *consistent* statement by the alleged victim in a statutory rape case:

> "* * * In this case the out-of-court declarant, i.e., the prosecuting witness, was obviously 'present at the hearing and available for cross examination.' Thus Rule 63 (1) would permit Mrs. Bryan to testify to the full details of the September 18, 1969, conversation with the prosecuting witness.

"It has been pointed out that the law in Oregon is not in accord with the proposed Uniform Rule. *See,* Swearingen, *How the Adoption of the Uniform Rules of Evidence Would Affect the Law of Evidence in Oregon: Rules 62-66,* 42 Or L Rev 200 (1963), and cases cited therein. More recently, our Supreme Court has stated:

"[*See* quotation in State v. Fennell, supra, from State v. Randolph, supra.]

"We quoted this same passage from *Randolph* in *State v. Fennell,* 7 Or App 256, 489 P2d 964, Sup Ct *review denied* (1971), and noted that the *Randolph* decision left the question of whether Rule 63 (1) is or is not the law of Oregon in doubt. As doubtful as the question remains, we now conclude that the quoted passage from *Randolph* cannot be interpreted as meaning our Supreme Court has adopted the proposed Rule, and thus by silent implication overruled numerous of its prior decisions. Therefore, we follow those prior decisions. *See,* 42 Or L Rev 200, supra, at 201-02." (Footnote omitted.) 7 Or App at 142-43.

Preliminarily, it should be noted that there is no apparent conflict between Rule 63 (1) and the "confrontation" clauses of the U.S. Constitution. *Nelson v. O'Neil,* 402 US 622, 91 S Ct 1723, 29 L Ed 2d 222 (1971); *California v. Green,* 399 US 149, 90 S Ct 1930, 26 L Ed 2d 489 (1970).

In light of two recent Oregon Supreme Court decisions our rejection of Rule 63 (1) in *Waites* may have been premature.

In *Sheedy v. Stall,* 255 Or 594, 468 P2d 529 (1970), decided before we decided *Waites* but overlooked by this court therein, the court stated:

"The correct application of the rule that hearsay evidence is not admissible is one of the most difficult tasks in the law. *An examination of the*

*reasoning behind the rule is probably the best basis for determining whether the evidence is admissible.*

"Hearsay evidence is excluded because of its untrustworthiness. The declarant's accuracy and veracity cannot be tested by cross-examination. *State v. Kendrick,* 239 Or 512, 515, 398 P2d 471 (1965). It is not the untrustworthiness of the testimony of the witness on the stand who is asked to testify to what the declarant said that causes the exclusion of hearsay testimony. The credibility of the witness can be tested by cross-examination. The problem of the trustworthiness of the witness in the courtroom is the same whether the witness is testifying to another's conduct or to another's words. It is the untrustworthiness of the declarant's statement that causes hearsay testimony to be excluded." (Emphasis supplied.) 255 Or at 596-97.

In *Timber Access Ind. v. U.S. Plywood,* 263 Or 509, 503 P2d 482 (1972), the court again dealt with the admissibility of hearsay:

"Over defendant's objection that it was hearsay, the court permitted Ramsey, plaintiff's president, to testify that after he had received the letter from Kostur refusing to take logs after November 30, he called Girard, who was then the operations manager of Plywood's Gold Beach plant, and was told by Girard that it had been his intent to buy the logs unconditionally and that Plywood had bought and was obligated to take six million board feet of logs. Girard died prior to trial. Plywood contends the court erred in receiving this testimony.

"The presently recognized definition of hearsay is stated in McCormick on Evidence § 246, at 584 (2d ed 1972):

"'* * * *Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an*

*assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.'* (Emphasis in original; footnote omitted.)

Because the person making the statement is not under oath nor is subject to cross-examination, and the jury has no opportunity to observe or to evaluate his demeanor, the truthfulness of the statement is suspect.

"There is no doubt that the testimony in question is hearsay. Girard's out-of-court statement was used for the purpose of proving that Plywood unconditionally agreed to purchase six million board feet of logs. Therefore, unless the testimony came within an exception to the hearsay rule, it was not admissible. The exceptions to the rule usually encompass situations in which the out-of-court statements are made under circumstances which guarantee the probable trustworthiness of the statements." 263 Or at 514-15.

"In the present situation, Girard's purported statement concerning the conditions under which the logs were purchased does not fit nicely under any of the generally recognized exceptions to the hearsay rule. However, if the words were spoken, there is an aura of trustworthiness about them which makes evidence of them admissible. A manager of a plywood plant gets to be manager because of his employer's confidence in his business acumen. * * * It is not natural, normal, or usual for a person to admit that he made what has turned out to be a poor deal unless, in fact, he did make it. Testimony concerning his statement should be an exception to the hearsay rule, not because he was acting as the agent of his employer at the time he made the statement; not because it was proof of a mental state or condition; not because it was an admission against his pecuniary interest; but because he was in a position to have knowledge of the facts, and a person in his position normally

would not have made the statement unless it was the truth. The declarant's interest, although not pecuniary, was sufficient to assure that he was not lying and that the statement was not the result of any mistake of fact." 263 Or at 519-20.

*Sheedy* notes that "* * * [a]n examination of the reasoning behind the [hearsay] rule is probably the best basis for determining whether the evidence is admissible." 255 Or at 596. "* * * It is the untrustworthiness of the declarant's statement that causes hearsay testimony to be excluded." 255 Or at 597. *Timber Access* adds: "* * * Because the person making the statement is not under oath nor is subject to cross-examination, and the jury has no opportunity to observe or to evaluate his demeanor, the truthfulness of the statement is suspect." 263 Or at 515.

The reasoning of the court in *Sheedy* and particularly in *Timber Access* represents a fresh approach to the myriad inconsistencies of the hearsay rule and its exceptions. It is our responsibility to similarly evaluate the admissibility of hearsay evidence.

At bar the questioned hearsay evidence is a statement made by a witness who was extensively cross-examined concerning his alleged original making of that statement. In similar circumstances our Supreme Court has stated:

"* * * The defendant was not, therefore, prejudiced by any lack of opportunity to cross-examine the person who had made the out-of-court declaration. The testimony * * * although hearsay, was not infected with the usual prejudicial quality of hearsay, i.e., that it is not subject to cross-examination." *State v. Herrera*, 236 Or 1, 7-8, 386 P2d 448 (1963).

Also:

"Hearsay evidence may be roughly defined as testimony by a witness on the stand as to what another unsworn person not a witness had said at an earlier time and a different place. The reasons for excluding hearsay evidence are clearly set forth by Professor Wigmore. Such evidence is excluded because its admission would deprive the opposing party of the valuable right of examining the declarant under oath and of the further right to confront the declarant as a witness. 5 Wigmore, Evidence § 1362 et seq. The party against whom such hearsay evidence is introduced ordinarily has no opportunity by cross-examination to determine the source of knowledge of the declarant, the accuracy of his memory or his credibility.

"If in the case at bar we were to hold that the receiving of Lloyd Hill's testimony was prejudicial error, we would be applying the hearsay rule to a case in which none of the reasons which support that rule were present. The declarant, Lloyd Hill, who (we are assuming) told Gabe Seeley that the defendant tied up the calf, was the same Lloyd Hill who under oath and subject to cross-examination was confronted on the stand and who testified to his own prior hearsay statement * * *." *State v. Opie,* 179 Or 187, 207-08, 170 P2d 736 (1946).[①]

---

[①] It should be noted that in one fairly recent case the court used language seemingly inconsistent with State v. Kendrick, 239 Or 512, 398 P2d 471 (1965); State v. Herrera, 236 Or 1, 386 P2d 448 (1963); and State v. Opie, 179 Or 187, 170 P2d 736 (1946). In Madron v. Thomson, 245 Or 513, 419 P2d 611, 423 P2d 496, 27 ALR3d 953 (1966), the court stated by way of dicta:

"The rule is that prior statements of a witness, not a party, made out of the courtroom, are only admissible for the purpose of impeachment and have no other probative value. This rule has been criticized, but we have followed it. E.g., *State v. Watts,* 208 Or 407, 411, 301 P2d 1035 (1956); for criticism see cases collected at 133 ALR 1454, 1462 (1941). The rule is a part of the hearsay rule. The statements are hearsay because they are not made under oath and are not subject to

Also:

"The ground for the exclusion of hearsay is that the opposing party has no opportunity to confront in court the person making the statement and test his veracity and accuracy by cross examination. *State v. [Opie]*, 179 Or 187, 170 P2d 736 * * *." *State v. Kendrick*, 239 Or 512, 515, 398 P2d 471 (1965).

■ These cases support the conclusion that, where the out-of-court declarant is available for cross-examination at trial on the subject matter contained in his statement, the trier of fact has sufficient basis to rationally assess its trustworthiness. If under the hearsay rule evidence is excluded because of a lack of opportunity to evaluate trustworthiness, in such circumstances as are presented in the case at bar, the application of the rule would bar useful evidence needlessly. Pursuant to the reasoning of *Sheedy* and *Timber Access*, the evidence should be heard by the jury to be considered on the substantive issues.

Until recently, since *State of Oregon v. Fitzhugh*, 2 Or 227, 234-35 (1867), the court has uniformly followed the rule that such inconsistent statements can be used only to impeach the witness. *State v. Jarvis*, 18 Or 360, 366, 23 P 251 (1890); *Anderson v. Aupperle*, 51 Or 556, 563, 95 P 330 (1908); *Timmins v. Hale*, 122 Or 24, 36, 256 P 770 (1927); *Schluter v. Niagara Fire Ins. Co.*, 124 Or 560, 264 P 859 (1928); *State of*

---

cross-examination *at the time made.*" (Emphasis supplied.) (Footnote omitted.) 245 Or at 516.

The language in *Madron* is not inconsistent with *Kendrick*, *Opie* and *Herrera* in view of the reasoning in Sheedy v. Stall, 255 Or 594, 468 P2d 529 (1970). A statement may be hearsay because it was not subject to cross-examination at the time made but nonetheless be admissible hearsay if subject to cross-examination at the time it is received in evidence.

*Oregon v. Watts,* 208 Or 407, 301 P2d 1035 (1956);
*State v. Christensen,* 3 Or App 442, 474 P2d 782 (1970).

■ Application of the reasoning of *Sheedy* and *Timber Access* reveals the weak point in the reasons given for limiting hearsay to impeachment purposes only. The jury has ample opportunity to observe the out-of-court declarant and determine which, if any, of his statements are the truth. We place reliance upon the jury to find the true facts; we should not confess doubts about the wisdom of that reliance by refusing to let the jury consider relevant evidence except for the most cogent reasons.

In order to consider a prior inconsistent statement for impeachment purposes, the jury must first find that such a statement was made. Having once found it was made, it is tortured logic to say that the jury in considering the statement for impeachment purposes is not using the statement as substantive evidence of the truth. It is difficult to believe that, once heard, "impeachment" evidence itself is not used, consciously or unconsciously, for substantive purposes by all juries.

Judge Hand in expressing the opinion of the United States Court of Appeals, Second Circuit, reasoned:

"* * * It is one thing to put in a statement of a person not before the jury: that is indeed hearsay bare and unredeemed. But it is quite a different matter to use them when the witness is before the jury, as part of the evidence derived from him of what is the truth, for it may be highly probative to observe and mark the manner of his denial, which is as much a part of his conduct on the stand as the words he utters. Again and again in all sorts of situations we become satisfied, even without earlier contradiction, not only that a denial

is false, but that the truth is the opposite: 'The lady doth protest too much, methinks.' This is not to rely upon the statement as a ground of inference, taken apart from the sum of all that appears in court; it is to allow the jury to use the whole congeries of all that they see and hear to tell where the truth lies." *United States v. Allied Stevedoring Corp.*, 241 F2d 925, 933 (2d Cir), *cert denied* 353 US 984 (1957).

*See also Di Carlo v. United States*, 6 F2d 364, 368 (2d Cir 1925).

■ Instructing a jury that certain evidence may be used for impeachment purposes only becomes in reality a further cautionary instruction that evidence of out-of-court statements is to be viewed with caution. The trial court's instructions adequately did that in the case at bar.

Considering such evidence for impeachment purposes only may also be seen as expressing a rule of law that hearsay evidence alone may not be sufficient to support a conviction. We expressly do not reach that question here, but if such is the law, the limiting instruction has little meaning. If the case against defendant is based solely on such evidence, it can strongly be argued that the jury should not be instructed at all, but rather the case should be dismissed. *Cf. State of Oregon v. Watts*, supra; *State v. Christensen*, supra. Given the evidence in the case at bar, the hearsay evidence was only one item among many from which the jury could have found defendant knew the property was stolen. Thus, the question of whether the hearsay evidence alone would be sufficient to support a conviction is not presented here.

■ We summarize: It is not error to admit hearsay for substantive purposes where the reasons for

excluding hearsay are not present. Hearsay statements of a witness available for cross-examination are admissible because the trier of fact has an opportunity to assess the declarant's demeanor and general credibility.

Such a conclusion appears to be the equivalent of an adoption of Uniform Rule 63 (1), yet there are some differences.

██ Rule 63 (1) would seem to allow admission of all prior consistent statements of a witness. Such statements may be inadmissible hearsay for reasons other than those overcome by the declarant's availability for cross-examination. For example: Hearsay may also be excluded on grounds of relevancy, *Schneider v. Tapfer,* 92 Or 520, 180 P 107 (1919). Or where hearsay evidence may lead to the jury's confusing the credibility of the witness with the credibility of the out-of-court declarant, it also should not be admitted, *State v. Crawley,* 242 Or 601, 410 P2d 1012 (1966); *State v. Waites,* supra.

Accordingly, we do not hold that hearsay evidence of a prior consistent statement of a witness is admissible absent some further reason for such a statement's being relevant. That is not our instant case. *Compare State v. Herrera,* supra, 236 Or at 8, *with State v. Waites,* supra.

The trial court did not err in its instructions.

Affirmed.

SCHWAB, C. J., dissenting.

Our function as an intermediate appellate court is limited to ascertaining and applying Oregon law as articulated by the Oregon Supreme Court. The Su-

preme Court has repeatedly held that prior inconsistent statements are only admissible as impeachment, and not as substantive evidence. For example, in *Madron v. Thomson,* 245 Or 513, 516, 419 P2d 611, 423 P2d 496, 27 ALR3d 953 (1966), the court stated:

> "The rule is that prior statements of a witness, not a party, made out of the courtroom, are only admissible for the purpose of impeachment and have no other probative value. This rule has been criticized, but we have followed it. E.g., *State v. Watts,* 208 Or 407, 411, 301 P2d 1035 (1956); for criticism see cases collected at 133 ALR 1454, 1462 (1941). The rule is a part of the hearsay rule. The statements are hearsay because they are not made under oath and are not subject to cross-examination at the time made."[①]

The majority departs from this settled doctrine. The basis for so doing, the majority reasons, is its conclusion that the cases cited above and in n 1 have all been *sub silentio* overruled by six Supreme Court decisions: *Timber Access, Ind. v. U.S. Plywood,* 263 Or 509, 503 P2d 482 (1972); *Sheedy v. Stall,* 255 Or 594, 468 P2d 529 (1970); *State v. Randolph,* 251 Or 45, 444 P2d 545 (1968); *State v. Kendrick,* 239 Or 512, 398 P2d 471 (1965); *State v. Herrera,* 236 Or 1, 386 P2d 448 (1963); *State v. Opie,* 179 Or 187, 170 P2d 736 (1946). I do not agree with the majority's interpretation of those six opinions, although there is language in some

---

[①] *See also,* State v. Schwensen, 237 Or 506, 392 P2d 328 (1964); Austin v. Portland Traction Co. et al, 181 Or 470, 182 P2d 412 (1947); State v. Newburn, 178 Or 238, 166 P2d 470 (1946); In re Lambert's Estate, 166 Or 529, 114 P2d 125 (1941); Schluter v. Niagara Fire Ins. Co., 124 Or 560, 264 P 859 (1928); Timmins v. Hale, 122 Or 24, 256 P 770 (1927); Anderson v. Aupperle, 51 Or 556, 95 P 330 (1908); State v. Jarvis, 18 Or 360, 23 P 251 (1890); State of Oregon v. Fitzhugh, 2 Or 227 (1867); *see generally,* ORS 45.610 and annotations to that statute.

which indicates lack of positiveness on the merits of the issue.

*Timber Access* was a case where offered hearsay evidence did not fit comfortably into any of the recognized exceptions to the hearsay rule. Reasoning by analogy to the declaration-against-interest exception the Supreme Court concluded:

> "* * * The declarant's interest, although not pecuniary, was sufficient to assure that he was not lying and that the statement was not the result of any mistake of fact." 263 Or at 520.

Concerning another hearsay problem in the case, the court stated:

> "* * * The letter was self-serving and should not have been admitted to confirm what Ramsey said Girard told him. Admissibility in such a situation would permit Ramsey to write five letters to Plywood and to introduce all five of them to bolster his credibility * * *." 263 Or at 523.

If Rule 63 (1) of the Uniform Rules of Evidence were the law of Oregon, this last quoted statement would be inaccurate.

*Sheedy* held that evidence was admissible because it was not hearsay, i.e., was not offered to prove the truth of an out-of-court statement, but only to show that a statement was made. *Sheedy* also emphasized that such evidence was only admissible for the limited purpose of showing that a statement was made. If Rule 63 (1) were the law of Oregon, this latter observation would be inaccurate.

The question in *Randolph* was the admissibility of hearsay testimony that a robbery victim had previously identified the defendant as the robber. The Supreme Court stated, "the * * * testimony was

hearsay and inadmissible." 251 Or at 46, but held the error to be harmless. If Rule 63 (1) were the law of Oregon, the quoted statement would be inaccurate. Yet in *Randolph* the court also stated it had previously "indicated tacit approval" of Rule 63 (1). 251 Or at 47. I can only conclude, given the huge body of contrary authority, *see* n 1, supra, that "tacit approval" is considerably less than literal approval.

*Kendrick* was a spontaneous exclamation case. I find nothing in that opinion at all helpful in this case.

*Herrera* merely held that admission of hearsay was harmless error. By contrast, the threshold question in this case is whether any error was committed.

Likewise, *Opie* was a harmless error case. When evidence was admitted that would be admissible under Rule 63 (1), the Supreme Court noted this was a "technical violation of the hearsay rule," but found the error to be harmless. 179 Or at 207. It is hard to understand how this amounts to approval, tacit or otherwise, of Rule 63 (1). Moreover, concerning another aspect of the case—admission of a prior inconsistent statement—the court stated:

> "We think the testimony should have been received for the purpose of impeachment only * * *." 179 Or at 209.

In summary, the Oregon Supreme Court has, on many occasions dating back to 1867, ruled that prior inconsistent statements are not admissible as substantive evidence, but only for purposes of impeachment, *see* n 1, supra; those cases have never been expressly overruled; and I do not agree with the majority's conclusion that such a large body of au-

thority has, by silent implication, been overruled by the six cases relied upon by the majority. Accordingly, I would hold that the trial court erred in instructing the jury that a prior inconsistent statement could be regarded as substantive evidence of the truth of the matter asserted therein.

I would also hold the error prejudicial. The Supreme Court's opinions in *Randolph, Herrera* and *Opie* all suggest that if an out-of-court declarant is available for cross-examination then violation of the hearsay rule is not prejudicial error. However, two differences between those cases and this case should lead to a different conclusion here in my opinion: (1) here the trial court explicitly instructed the jury that it could regard Clark's prior inconsistent statement to the effect that defendant knew property was stolen as substantive evidence that defendant did know that fact; and (2) there was little other evidence of guilty knowledge. I cannot say that this error "was very unlikely to have changed the result of the trial." *State v. Van Hooser,* 266 Or 19, 511 P2d 359, 363 (1973). I would reverse.

Finally, I emphasize that my dissent is based solely on what I understand the current Oregon law to be, and is not based on what I think Oregon law should be. The parties' arguments in this case present strong arguments for and against the adoption of Rule 63 (1). Indeed, there is some indication that this case comes to us as a "test case" to finally resolve the Rule 63 (1) issue. There is nothing wrong with test cases. But if test case this be, it belongs in the court with the ability to change and clarify Oregon case law discussed above, that is, the Oregon Supreme Court.