576 So.2d 737 (1991)
Kent STANFORD, Appellant,
v.
STATE of Florida, Appellee.
No. 88-2834.
District Court of Appeal of Florida, Fourth District.
January 23, 1991.
Rehearing and Certification of Question Denied April 10, 1991.
*738 Richard L. Jorandby, Public Defender, and Marcy K. Allen, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Georgina Jimenez-Orosa, Asst. Atty. Gen., West Palm Beach, for appellee.
ANSTEAD, Judge.
Appellant, Kent Stanford, challenges judgments finding him guilty of armed robbery and attempted first degree murder and the sentence imposed based upon those judgments. We affirm the convictions but reverse the sentencing order and remand for resentencing in accord with recent state supreme court decisions.

FACTS
Kent Stanford a/k/a Mark Lee Hopkins, was charged by information with attempted first degree murder and with robbery with a deadly weapon. At trial the victim, Alfonso Asencio, testified through a translator that he met Stanford, whom he knew and identified as Mark, at a Home Depot store when he asked another employee if he knew an electrician who could help install a sprinkler system. Asencio paid Stanford to remove an existing system pump motor, take it to be repaired and return to install it. Stanford visited Asencio's house several times without calling to see if the pump was ready for reinstallation. On one occasion, Stanford brought with him a young woman who ate lunch with Asencio's wife while Asencio and Stanford talked about the motor installation.
On the day Asencio was beaten, Stanford came to the Asencios' house while Asencio was changing the oil in his car. Stanford removed the filter with a hammer and screw driver and asked Asencio to get the new oil. Asencio went to a shed behind his house, and Stanford followed him and beat him while they were inside. Asencio lost consciousness thereafter and said that the next thing he remembered was waking up in the hospital the following week. He also testified that Stanford took about seven hundred dollars, his gold chain, a watch, and a pinkie ring. Asencio stressed that he remembered what Stanford did to him because he opened his eyes during the attack.
Mrs. Asencio testified that she was also acquainted with Stanford. On the day of the attack, Mrs. Asencio went to the shed after her grandson found her husband hurt and bleeding. She found her husband lying on the ground but he did not say anything to her.
John Alfeo, the Asencios' grandson, testified that he knew Stanford and had seen him at his grandparents' house several times including the day of the attack. On that day John went outside to get his grandfather for lunch and found him lying inside the shed bleeding. He said that he asked his grandfather, who was conscious, whether Mark did it, and that his grandfather nodded affirmatively to him. There was no objection to this testimony.
Nancy Odom, the Asencios' daughter, testified that on the day her father was attacked, her mother called her at work to come home immediately. She found the ambulance attendants treating her father and testified, over objection, that when she asked her father who had beat him, he responded with the descriptive term "negreto" and the name Mark.
Susan Hayes, a police officer and the Asencios' neighbor, testified that she went to the house when Mrs. Asencio and John Alfeo called her. When she asked Asencio who beat him, he responded with the name, Mark. Hayes identified Stanford as a man she saw in the Asencios' yard earlier on the day of the assault.
Sheila Walters testified that she was the young girl who had previously accompanied Stanford to the Asencios' home. She knew him under both the names Mark Hopkins and Kent Stanford. She had met him at Home Depot and established a romantic relationship despite a disparity in their ages. On the day Asencio was beaten, she remained at a park near the victim's home because Stanford said he had to finish some work for the Asencios. Walters testified that she and Stanford had planned to leave the area because her mother wanted them to stop dating. She said that when *739 Stanford arrived at the park to pick her up, he was dazed and in a hurry. He had money which he claimed Asencio had paid him and additional money he told her he took from the Asencios' table. He also had a gold necklace. She and Stanford fled to Newark, New Jersey and later to California.
Travel agent Michelle Sanchez testified that she made airline reservations for and sold tickets to Stanford and Walters under the names of Arthur and Ruth Smith. Sanchez identified Stanford as Mr. Smith and said the couple paid cash for the tickets and was in a hurry to catch the flight.
Former police officer Vincent Manger testified that he was assigned to locate Stanford soon after the Asencio beating. He distributed pictures of Stanford and Ms. Walters throughout the country. The Los Angeles, California Police Department contacted him during his investigation and eventually forwarded a set of fingerprints bearing Kent Stanford's signature. Manger turned the print cards over to Elaine Stranieri, a latent print expert, for comparison. Stranieri testified that she compared the latent prints obtained at the Asencio home and found one matched a print on the card supplied by the Los Angeles Police. She compared only Stanford's prints to those obtained at the scene despite the finding that there were other unidentified prints of value found on the shed. Over Stanford's objection, the trial court admitted the California print card as evidence.
Neurosurgeon Don Sheffel testified that he treated Asencio for a depressed skull fracture and several cerebral contusions. He performed emergency surgery to clean the fracture and repair the membrane and found a blood clot as well as internal lacerations undoubtedly caused by severe impact to the skull. As the result of a significant amount of force, the skull bone was pushed through the hard membrane into the brain causing a hemorrhage and possible life-threatening injury.
Following additional testimony, largely irrelevant to the issues on appeal, the jury found Stanford guilty of attempted first degree murder and robbery with a deadly weapon. Although the court's guidelines form indicated that the recommended sentence was 12-17 years, the state filed a motion to aggravate sentence, and the court departed from the recommended sentence by sentencing appellant to a life term as to the robbery count and a 30 year term as to the attempted murder count, to run concurrent to each other, but consecutive to a pending California sentence.

VICTIM'S OUT-OF-COURT STATEMENTS
Stanford initially claims that the trial court erred in admitting alleged hearsay testimony of the victim's statements naming Stanford as his assailant. The court permitted, over objection, the victim's daughter and the witness Hayes to testify that the victim named Stanford as his assailant. In addition, the victim's grandson testified without objection that his grandfather affirmatively indicated that Stanford was the assailant.
According to section 90.801(2), Florida Statutes,
[a] statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is:
* * * * * *
(c) One of identification of a person made after perceiving him.
Both the testimony of the person having made the identification and of witnesses who were present when the identification was made are admissible. The official comments to section 90.801 note that such statements bear the mark of reliability because they are usually made in close temporal proximity to the actual event while the witnesses' visual memory of the event is fresh.
We believe that the typical situation contemplated by the code and the case law is one where the victim sees the assailant shortly after the criminal episode and says, "that's the man."[1] Hence, the phrase *740 "identification of a person made after perceiving him" refers to the witness seeing a person after the criminal episode and identifying that person as the offender. We do not believe this code provision was intended to allow other out-of-court statements by a witness to others naming the person that the witness believes committed the crime. To extend the rule that far would permit countless repetitions by a witness to others, regardless of time and place, of the witnesses' belief as to the guilty party, a result we do not believe intended by the drafters of the rule.
Case law supports this interpretation.[2] In Henry v. State, 383 So.2d 320 (Fla. 5th DCA 1980), a 12 year-old sexual battery victim saw the defendant on the street 2 months after the attack and identified him to her father as the man who attacked her. The victim's father was permitted to testify over objection regarding his daughter's identification of the defendant because the girl was present at trial and available to testify about the attack and about her subsequent identification of the defendant as her attacker. See also Brown v. State, 413 So.2d 414 (Fla. 5th DCA 1982). In United States v. Owens, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988), the court approved admission of a victim's statement naming his attacker, even though the declarant himself could no longer remember the incident, under Federal Rule of Evidence 801(d)(1)(C), which is similar to section 90.801 in its language and effect. The court explained that while such statements are traditionally considered inadmissible hearsay, they become non-hearsay when the declarant is available at trial for cross-examination concerning the prior identification. Given adequate safeguards, the court felt out-of-court identifications are preferable to courtroom identifications because they take place closer in time to the actual event. Thus, there is a lessened possibility of taint than when an identification is made in court where the identified person (defendant) is in the obvious "hotseat" alongside his counsel. The Owens court noted that the rule is premised upon the understanding that a natural memory loss over time makes it more difficult to provide a positive identification at the time of trial.
Pre-code case law also supports this interpretation. Even before adoption of the evidence code, Florida courts allowed evidence of out-of-court identifications. In State v. Freber, 366 So.2d 426 (Fla. 1978), the court approved the admission of such evidence and held that it was irrelevant if the declarant could not make an in-court identification, as long as he was available to testify at trial regarding his prior identification and the witness testifying at trial was present for the identification.
Although the identification evidence challenged herein is not the precise evidence envisioned by the code we believe the admission of the statements were harmless at worst.[3] First, we note that the victim's grandson testified without objection that the *741 victim named Stanford as his attacker. Hence, the other testimony to the same effect was cumulative. We also note that the identification made here bears much of the same indicia of reliability as an identification made under the rule. The victim knew the assailant and identified him to witnesses while the episode was fresh in his mind. Second, we note that the evidence against Stanford was overwhelming and we do not believe there was any reasonable possibility that the admission of the two witnesses' statements made any substantial difference to the jury. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).

FINGERPRINTS
Stanford argues that the trial court should not have admitted as evidence the photocopy of a fingerprint card forwarded to the Hollywood Police Department from the Los Angeles Police Department because the card was not adequately authenticated. However, we conclude that any error in admission of the card was harmless in view of the substantial testimony concerning the card and its contents which was presented to the jury without objection. We are also of the view that even if the court erroneously admitted the card it is at best harmless error given the overwhelming evidence of appellant's guilt and presence at the scene of the crime.

SENTENCING
Stanford next claims error in the trial court's failure to give contemporaneous written reasons for departure in the sentence. In Ree v. State, 565 So.2d 1329 (Fla. 1990), the state supreme court held that trial courts must contemporaneously record in writing any reasons for departure from a recommended sentence. In Pope v. State, 561 So.2d 554 (Fla. 1990) the supreme court held that sentences without contemporaneous written reasons must be vacated and guidelines sentences imposed
when an appellate court reverses a departure sentence because there were no written reasons, the court must remand for resentencing with no possibility of departure from the guidelines.
561 So.2d at 554. Because the court held that when the trial court does not prepare a contemporaneous written order explaining its reasons for departure, it is as though no written reasons were provided, the Pope holding resolves this issue and requires our remand for resentencing with no possibility of departure.

CONCLUSION
In light of the foregoing analysis, we affirm Stanford's convictions. However, the trial court's failure to contemporaneously record the reasons for upward departure from the recommended sentence requires vacation of the sentence and remand for resentencing with the limitation that the trial court not depart from the recommended sentence.
WARNER, J., concurs.
GUNTHER, J., concurs in result only.
NOTES
[1] Swafford v. State, 533 So.2d 270 (Fla. 1988); Niblett v. Commonwealth, 217 Va. 76, 225 S.E.2d 391 (1976); Commonwealth v. Torres, 367 Mass. 737, 327 N.E.2d 871 (1975); Lucas v. State, 160 Tex.Crim. 443, 271 S.W.2d 821 (1954); People v. Gould, 54 Cal.2d 621, 7 Cal. Rptr. 273, 354 P.2d 865 (1960); Hendrieth v. State, 483 So.2d 768 (Fla. 1st DCA 1986); People v. Pew, 543 P.2d 86 (Colo. App. 1975); People v. Nival, 33 N.Y.2d 391, 353 N.Y.S.2d 409, 308 N.E.2d 883 (1974); State v. Fennell, 7 Or. App. 256, 489 P.2d 964 (1971).
[2] Id.
[3] The cases which appellant cites as support for his exclusion argument are not really on point. The courts deciding those cases acknowledge the general rule permitting extrajudicial identifications, but distinguish them because of factors not present in the instant case. In Graham v. State, 479 So.2d 824 (Fla. 2d DCA 1985), a police officer testified regarding statements made by two non-testifying witnesses whose testimony was specifically excluded by a pretrial order-in-limine. The court held that the testimony was erroneously admitted because it violated the pretrial order. In Swafford v. State, 533 So.2d 270 (Fla. 1988), cert. denied, 489 U.S. 1100, 109 S.Ct. 1578, 103 L.Ed.2d 944 (1989), the defendant sought to introduce as evidence a police bulletin and testimony of the officer who prepared it. The trial court excluded the evidence as hearsay. Although the appellate court recognized the general rule permitting out-of-court identifications, it approved the exclusion because the witness' description did not amount to an actual identification. Section 90.801(2)(C), the court held, applies only to designations and references to a particular person, not to general characteristic descriptions.