582 So.2d 1245 (1991)
In the Interest of C.T., a Child.
No. 90-2352.
District Court of Appeal of Florida, Fourth District.
July 24, 1991.
Richard L. Jorandby, Public Defender, and Robert Friedman, Asst. Public Defender, West Palm Beach, for appellant-C.T., a child.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Melvina Racey Flaherty, Asst. Atty. Gen., West Palm Beach, for appellee-State of Florida.
PER CURIAM.
Appellant, a minor, was charged by petition for delinquency with attempted battery *1246 on a law enforcement officer. At the disposition hearing, the arresting deputy testified that he was dispatched to Indian River Memorial Hospital on a disturbance call involving appellant, who was very intoxicated with an extremely high blood alcohol level of .30. The deputy, in uniform and wearing his badge, tried to get appellant up from a gurney by shaking him and touching him on the shoulders whereupon appellant took several swings at him.
Appellant testified that on the night in question he drank three bottles of Jim Beam; that he did not remember lying on the side of the road  having been picked up there by an ambulance  nor being at the hospital. He said that he did not intend to strike at a deputy.
The trial court considered disorderly intoxication to be a lesser included offense and found appellant guilty thereof, while finding him not guilty of attempted battery on a law enforcement officer because his voluntary intoxication negated the required intent. It adjudicated appellant delinquent and sentenced him to community control.
The state agrees disorderly intoxication was not within the scope of the petition, but claims the error not to be fundamental. We disagree. In Rose v. State, 507 So.2d 630 (Fla. 5th DCA 1987), the court said:
It is elementary that the conviction of a crime not charged violates constitutional due process as well as the constitutional right of the accused in all criminal cases to be informed of the nature and cause of the accusation against him. The violation of such constitutional rights constitutes fundamental error and is presumptively prejudicial and most certainly not within the discretion of any judge to permit.
Id. at 631-32. Disorderly intoxication was not a lesser included offense. Accordingly, we reverse.
LETTS and DELL, JJ., concur.
GLICKSTEIN, C.J., concurs specially with opinion.
GLICKSTEIN, Chief Judge, concurring specially.
I concur with the analysis and result of the majority opinion.
While the juvenile has won his case, he may have a bigger fight to win, as evidenced by his use of alcohol. He is fortunate to have survived this incident, having been found lying on the side of the road.
There is allusion in the record to the child's attempt at suicide, of the father's suicide attempt as well, and the mother's wish that her son not be returned home because of his use of alcohol. Others having observed that "It's never too late to have a happy childhood," I hope somewhere in or out of the system there is an opportunity to address and resolve the causative factors of the child's drinking.
Recently, the following observations were made:
The 13-year-old, the daughter of two lawyers, had been drinking for about four years when she showed up for gymnastics practice at her private school in Massachusetts, too drunk to perform. A 15-year-old boy told a juvenile court judge: "I'm not a problem drinker. I only have a six-pack of beer an evening." A 16-year-old regularly consumed enough vodka and beer to have hallucinations in her kitchen, seeing skeletons, knives and images she took for visions of Satan's realm.
These are the children of alcohol, whose numbers have waxed and waned over the centuries, from the days when ancient Greeks worshiped Dionysus, the god of wine, to London's Gin Lane in the late 18th century, to America's suburban malls and fraternity houses today. They are the inheritors  some would say the victims  of the country's ambivalence about the intoxicant of the ages.
While experts say that the use of other recreational drugs has diminished since the end of the 1970's, alcohol use has diminished far more slowly. Its staying power as the intoxicant of choice among the young has made it the nation's most persistent problem drug.
... .

*1247 Generally, the young drinkers who need the most help to change their behavior are those who started drinking earliest, experts in public health and adolescent psychology say. But other than that, they say, it is difficult to predict the course of adolescent drinking.
Children who experiment with liquor in early teens could be off it by high school, but most are not. Young men and women who wait until college to do their heavy drinking may be more destructive in their drinking habits than those who drank earlier but more moderately.
Most drinking begins at the liquor cabinet at home, experts say.
... .
"The commonest reason for kids using alcohol," said Margaret Bean-Bayog, a psychiatrist in private practice in Newton, Mass., "is that it's in the subculture around them. Kids in a grade school where everyone is drinking are more likely to drink. For kids whose parents use it, they don't have a reference point that doesn't include alcohol."
The N.Y. Times, June 23, 1991, Week and Review Section, at 1, 4.
The newly appointed Director of the Office of National Drug Control Policy has announced that appropriate attention will now be given to the use of alcohol and tobacco by our young people. That attention will, hopefully, be directed at the causes and preventive measures.
In her book, Jolted Sober: Getting to the Moment of Clarity in the Recovery from Addiction (1989), Sylvia Cary begins her preface, The Day I was Jolted Sober, with a quote from Ovid:
In medicine, as in life, until the mind has been prepared to see something, it will pass unnoticed, as invisible as though it did not exist.
Later she discusses Rx: A Moment of Clarity:
Swiss psychoanalyst Carl Jung was well aware of the importance of a jolt-healing experience to insure lasting sobriety. The story goes that a wealthy American alcoholic named Rowland H. (his last name isn't known) went to Switzerland to go into analysis with Jung to cure his alcoholism, but to no avail. After a year, Jung told Rowland that he couldn't help him, that his only salvation was a vital spiritual experience.
That's a hard prescription to fill! But that's exactly what happened. Rowland returned to America, joined a philosophical, evangelical organization called the Oxford Groups founded on "right living," had his spiritual experience, and did indeed stop drinking. Rowland told his friend Ebby Thatcher all about it, and Ebby joined and also stopped drinking. Then Ebby told his friend Bill Wilson, and later Bill Wilson had his famous spiritual awakening in his room at the Charles B. Towns Hospital in New York, stopped drinking, and went on to start Alcoholics Anonymous. The rest is AA history. Today the organization is worldwide and has two million members.
Finally, in Finding the Right Trigger, she says on this point:
A trigger can be anything  a dream, a memory, a feeling, a trauma, a near-death experience, a smell, a look on a child's face, a snatch of movie dialogue, the words of a song, a piece of information, a confrontation, fright, hunger, fatigue, deep breathing, music, mountains, a painting, chanting, a Zen koan, dancing, yoga, running, even somebody else's throwaway line. There are as many triggers as snowflakes, no two alike.
Given the poster: "Denial is Not a River in Egypt," illustrating the difficulty for an adult to trigger this "jolt" alone, it would be naive for me to expect this child to do it without help from somewhere.