755 So.2d 683 (1999)
David DOMIS, Appellant,
v.
STATE of Florida, Appellee.
No. 98-1242.
District Court of Appeal of Florida, Fourth District.
August 4, 1999.
*684 Steven W. Gomberg, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, for appellee.
CHAVIES, MICHAEL B., Associate Judge.
This is an appeal from the second trial in this case; the first trial resulted in a mistrial on unrelated grounds.
The defendant, David Domis, was charged by amended information with seven counts of lewd and lascivious assault upon a child, hereinafter referred to as "A." By this information, Domis was charged with seven separate lewd acts that took place at four different times over an eighteen month period. Counts 1 and 2 occurred between May 15 and June 30, 1993; counts 3 and 4 occurred between November 1 and December 10, 1993; counts 5 and 6 took place between June 1 and September 20, 1994; and count 7 took place on or about December 15, 1994.
Since the defendant's second point of appeal challenges the trial court's failure to grant the defendant's motion for severance, it will be necessary to recount some of the facts and circumstances surrounding the alleged assaults.
The first charged assault occurred while the defendant took the victim riding on his four-wheel bike. The victim drove the bike and the defendant was seated directly behind her holding onto her with his arms around her waist. While he was holding onto her waist, he allegedly touched her breasts, then he unbuttoned and unzipped her shorts, put his hand down her shorts, and tried to put his finger in (her). The second incident occurred at night at the defendant's house while the victim was baby-sitting the defendant's children. The victim woke up and the defendant put his hands on her breasts, then put his hands down her boxers and "started messing with her vagina." The third instance occurred again at night in the Domis house, in the living room while the victim was sleeping. The victim woke up and the defendant was rubbing her breasts, then he started to "mess with her vagina." The fourth incident occurred at the Domis house when the victim was spending the night and was lying on the floor watching television while another child, "M," was on the sofa. The defendant came out of his bedroom and laid down next to the victim. He then started rubbing her back; she shrugged to get him to stop, but he did not. He then started rubbing her breasts and she rolled over to the other side so he would stop. She then got up and walked into another room.
Domis moved pre-trial to sever counts 1 and 2, which arose out of the first assault, from the remaining charges; to sever counts 3 and 4, which arose out of the second assault, from the remaining *685 charges; to sever counts 5 and 6, which arose out of the third assault, from the remaining charges; and to sever count 7, which arose out of the fourth assault, from the remaining charges. The motion was denied prior to the defendant's first trial.
Florida Rule of Criminal Procedure 3.150 governs joinder of offenses and provides as follows:
(a) Joinder of Offenses. Two or more offenses that are triable in the same court may be charged in the same indictment or information in a separate count for each offense, when the offenses, whether felonies or misdemeanors, or both, are based on the same act or transaction or on 2 or more connected acts or transactions.
Fla. R.Crim. P. 3.150(a). Rule 3.152(a)(2), governing severance of offenses, provides as follows:
(2) In case 2 or more charges of related offenses are joined in a single indictment or information, the court ... shall grant a severance of the charges on a motion of the state or of a defendant:
(A) before trial on a showing that the severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense;
Fla. R.Crim. P. 3.152(a)(2)(A)
In the case of Garcia v. State, 568 So.2d 896 (Fla.1990), the supreme court discussed the law regarding severance of criminal charges:
[T]he "connected acts or transactions" requirement of Rule 3.150 means that the acts joined for trial must be considered "in an episodic sense[.]" The rules do not warrant joinder or consolidation of criminal charges based on similar but separate episodes, separated in time, which are "connected only by separate circumstances and the accused's alleged guilt in both or all instances." Paul [v. State], 365 So.2d [1063 (Fla. 1st DCA 1979) (Smith, J., dissenting)] ... Courts may consider "the temporal and geographical association, the nature of the crimes and the manner in which they were committed." Bundy v. State, 455 So.2d [330, 334 (Fla.1984)]
Garcia, 568 So.2d at 899.
In Ellis v. State, 622 So.2d 991 (Fla.1993), the supreme court explained that in order for joinder to be appropriate, the crimes must be linked in a significant way. The passage of time between the crimes does not, in and of itself, require severance. See Brunner v. State, 683 So.2d 1129, 1130 (Fla. 4th DCA 1996).
In the instant case, the four lewd assaults are linked in that the victim is the same; all of the lewd acts started in the same manner (i.e., touching the victim's breasts). All but the thwarted fourth attempted included a touching of the victim's vaginal area; three out of four of the assaults took place at the defendant's house where the victim was spending the night. The victim reported all of the assaults at once, and the family meeting, wherein the defendant was confronted, would be relevant to all charges and impossible to separate if severance were required. Moreover, the four assaults were linked by the similarity in the manner of the assault and the evidence regarding the defendant's reaction to the accusation.
The decision to grant or deny a severance is within the sound discretion of the trial court. See Garcia; Wonyetye v. State, 648 So.2d 797 (Fla. 4th DCA 1994). Based upon the significant link between the four lewd acts, the trial court did not abuse its discretion in denying the motion for severance.
Regarding the defendant's first point on appeal, this court reaches a different result. The defendant argues that the trial court erred when it failed to declare a mistrial when a witness repeatedly referred to other allegations of misconduct by the defendant. At the beginning of the first trial, the State stipulated that it would not introduce evidence of lewd acts allegedly committed by Domis upon another child, "M." The prosecutor stated that *686 he had discussed the restriction with the witnesses and asked the trial judge to reiterate the instruction to the witnesses. During the trial, a witness by the name of Joel Scott testified regarding a family meeting which was called by "A"'s father when he learned about the molestation from "A." During this testimony by Mr. Scott, the following took place:
Q: [PROSECUTOR]: Okay, how did the meeting begin?
A: [SCOTT]: it started off with Art he started asking questions.
Q: Okay, what kind of questions did he ask?
A: Man, that's going to be hard to remember.
Q: I'm not asking exactly what he said but just 
A: I believe Art made the allegation of the David had done something to "M" and "A."
Defense counsel objected and at sidebar moved for a mistrial. The defense acknowledged that the State did not intentionally elicit the testimony regarding "M." Domis asked that a curative instruction be given and also asked that the witness be admonished not to give any testimony regarding any victims other than "A." The trial judge agreed that the witness's statement was unintentional. The jury was excused, and the trial judge admonished the witness and the other witnesses to be called in the case not to refer to any allegations of misbehavior committed by the defendant upon "M." All acknowledged their understanding of the court's instruction.
The trial judge denied Domis' motion for mistrial. When the jury returned, the trial judge instructed them to disregard the "last answer of the witness given before [the] break and disregard it in its entirety."
Subsequently, during direct examination of the same witness, Joel Scott, the following took place:
Q: [PROSECUTOR]: What else do you recall the defendant saying at the family meeting?
A: Hehe said, why diddid you fondle did "A"I didn't "A""M's"I don't know. Will you ask me the question, one more time?
Defense counsel objected, asked to approach the bench, and was denied. The trial judge asked for grounds and the defendant stated they were the same as before and the same motion. The trial judge overruled the objection and denied the motion. The trial judge gave the State permission to ask the question more specifically, and the following occurred:
Q: What else did the defendant say about that, those questions, at the family meeting?
A: That he did fondle their breasts.
Domis objected but was overruled. Domis was found guilty of seven lesser-included counts of misdemeanor battery. He was convicted and sentenced to one year in the county jail with credit for 38 days time served, followed by three one-year terms of probation to be served consecutively.
When evidence of collateral crimes is erroneously admitted, the defendant's motion for mistrial based on the erroneous admission is addressed to the sound discretion of the trial court. Williams v. State, 692 So.2d 1014 (Fla. 4th DCA 1997). In Keen v. State, 504 So.2d 396 (Fla.1987), overruled on other grounds by Owen v. State, 596 So.2d 985 (Fla.1992), evidence of other crimes was elicited by the State despite the trial court's previous ruling of inadmissability; the court stated, "when such irrelevant evidence is admitted it is presumed harmful error because of the danger that a jury will take the bad character or propensity to crime thus demonstrated as evidence of guilt of the crime charged." Id. at 401 (quoting Straight v. State, 397 So.2d 903, 908 (Fla.1981)). Also, in State v. Ramos, 579 So.2d 360 (Fla. 4th DCA 1991), the trial court granted the *687 defendant's motion in limine to exclude any reference to the defendant's prior criminal conduct, but the prosecutor made reference to the defendant's participation in the business of selling cocaine in opening and elicited substantially similar testimony from a witness. The court held the error to be prejudicial and reversed.
Although the remarks made by the witness in the instant case certainly were not solicited by the prosecutor, there was, nevertheless, reference made by the witness to a collateral crime on three separate occasions. After the first reference, the defendant and the trial judge agreed that the reference made to "M" was improper but inadvertent, and a curative instruction was given. This reference, by itself, then, may well not have been prejudicial, and certainly there is ample authority for the proposition that "a witness's inadvertent suggestion that the defendant has criminal proclivities can be overcome by the judge's instruction to the jury to disregard the statement." Hellman v. State, 492 So.2d 1368, 1369 (Fla. 4th DCA 1986); Marshall v. State, 439 So.2d 973 (Fla. 3d DCA 1983). However, references were made twice thereafter with the trial court merely overruling the defense objection. We cannot say, therefore, that these three references to collateral crimes having been committed by the defendant had no effect upon the jury. To the contrary, this jury may well have received these collateral crimes allegations as evidence of guilt of the crime charged.
We, therefore, conclude that the failure to declare a mistrial was erroneous. Having determined that error was committed, we must now address the question of whether or not the error was harmless pursuant to section 924.051, Florida Statutes.
In the instant case, the impact upon the jury in considering the collateral crimes testimony was clearly prejudicial. Therefore, the court determines that Appellant carried his burden pursuant to the applicable section. Accordingly, we reverse and remand for a new trial.
WARNER, C.J. and SHAHOOD, J., concur.