902 So.2d 211 (2005)
Frederick RUTHERFORD, Appellant,
v.
STATE of Florida, Appellee.
No. 4D04-1229.
District Court of Appeal of Florida, Fourth District.
May 4, 2005.
*212 Carey Haughwout, Public Defender, and James W. McIntire, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and August A. Bonavita, Assistant Attorney General, West Palm Beach, for appellee.
GROSS, J.
The main issue we address in this case is whether the trial court erred in denying appellant, Frederick Rutherford's pretrial motion to sever robbery charges from charges arising from his flight from the police twelve hours after the robbery. We find no error and affirm.
John Douglass worked as a delivery driver for Papa John's Pizza. At about 10:00 p.m. on June 2, 2003, he was dispatched for a delivery to a residence in Boynton Beach. Unknown to Douglass, the delivery location was an abandoned house, where Rutherford and others were plotting to rob him.
Angela Nowell lived across the street from the vacant house and recognized Rutherford from the neighborhood. She saw him congregating with other persons in the darkness near the empty home. Once she noticed the pizza delivery car drive up, Nowell felt that a robbery was imminent, because the pizza man was heading to the abandoned house. Nowell alerted her mother, and the two of them stood outside and witnessed the events that transpired.
Douglass got out of his car and walked to the front door. Rutherford approached him and pretended to pay for the pies; he asked Douglass for change for a fifty dollar bill. Douglass handed Rutherford two pizza boxes and took out a flashlight so he could see the money. Douglass noticed Rutherford reach for an object in his pocket and shined his flashlight on him.
The flashlight spooked Rutherford, who put down the boxes. Rutherford pulled a small handgun out of his pocket, cocked it, and fired into the ground. In an aggressive tone, Rutherford said, "I'm not playing with you boy," and "Who do you think you're messing with." Rutherford then aimed at Douglass, who ran away down the block. Rutherford and other unidentified males gave chase, but Douglass got away.
Douglass circled back to his car and drove away from the scene unharmed. Police officers stopped him minutes later. After the initial investigation, Douglass, Nowell, and Nowell's mother all went to the police station and gave recorded statements to Investigator Paul Valerio of the Boynton Beach Police Department. Through those statements, the police developed a description of Rutherford as a black male, approximately 5'9" in height, with dreadlocks and a white T-shirt.
*213 The following morning at about 10:00 a.m., Valerio and Sergeant David Egnor began searching for the suspect. Relying upon the witnesses' descriptions, they soon spotted Rutherford sitting on the front porch of an unoccupied home a few blocks from the crime scene. After they approached and identified themselves as police officers, Rutherford began fumbling with something under the front of his shirt. Concerned that Rutherford was concealing a weapon, the officers asked him to stand so they could search him. At that point, Rutherford pushed Sergeant Egnor and fled on foot. Rutherford vaulted a chain link fence and the officers lost sight of him. A short while later officers captured Rutherford. They recovered no weapons from his person.
Nowell identified Rutherford at the scene of his arrest as the man who robbed the victim the night before. Investigator Valerio later created a photo line-up including Rutherford's picture, which he showed to Douglass and Nowell's mother. They both identified Rutherford with little hesitation.
Rutherford was charged with a total of six offenses. As a result of the June 2 robbery, he was charged with the following four offenses: 1) aggravated assault with a firearm; 2) discharging a firearm in public; 3) robbery with a firearm, and 4) being a felon in possession of a firearm. His flight from the police on the morning of June 3 generated an additional two charges: 1) battery on a law enforcement officer, and 2) resisting arrest without violence.
The felon in possession of a firearm charge was severed before trial. On the charges arising from the June 2 robbery, the jury found Rutherford guilty of aggravated assault with a firearm, not guilty of discharging a firearm in public, and guilty of the lesser included offense of attempted robbery with a firearm. As to the June 3 charges, the jury found him guilty of battery on a law enforcement officer and resisting arrest without violence. The trial judge dismissed the aggravated assault charge on double jeopardy grounds and sentenced Rutherford on the other counts.
Rutherford first argues on appeal that the trial court erred in denying his pretrial motion to sever the three charges arising out of the June 2 robbery from the two charges that arose from the June 3 flight from the police.
"The granting or denial of a motion to sever is generally a matter within the trial court's discretion and will not be disturbed absent a showing of abuse." Dupree v. State, 705 So.2d 90, 95 (Fla. 4th DCA 1998) (en banc).
Florida Rule of Criminal Procedure 3.150(a) authorizes joinder of offenses that are "based on the same act or transaction or on 2 or more connected acts or transactions." Florida Rule of Criminal Procedure 3.152(a)(1) requires pretrial severance of crimes that are "improperly charged" in a single information, because they do not meet the requirements of rule 3.150(a). The supreme court has explained that
[o]ffenses are "connected acts or transactions" within the meaning of rule 3.150(a) if they occurred within a single episode. Crimes can constitute a "single episode" if they are linked in some significant way.
Spencer v. State, 645 So.2d 377, 381 (Fla.1994) (citations omitted).
The "`connected acts or transactions' requirement of rule 3.150 means that the acts joined for trial must be considered `in an episodic sense[.]'" Garcia v. State, 568 So.2d 896, 899 (Fla.1990) (citations omitted). Factors relevant to a showing that crimes are "connected acts or transactions" *214 include: 1) temporal and geographic association of the crimes; 2) the nature of the crimes; 3) that the crimes involved the same victims; and 4) the manner in which the crimes were committed. See Domis v. State, 755 So.2d 683, 685 (Fla. 4th DCA 1999).
We hold that the June 2 robbery and the charges arising from Rutherford's June 3 arrest are "connected acts or transactions" within the meaning of rule 3.150(a), so that joinder was proper. Investigating the June 2 robbery, the police confronted Rutherford approximately twelve hours after the robbery, two blocks from the abandoned house where the crime occurred. Rutherford was still wearing the same clothes that he had worn the night before. Within hours, the investigation of the robbery led the police to Rutherford. The motive for the June 3 crimes was to avoid apprehension for the robbery.
This case is similar to Parker v. State, 421 So.2d 712 (Fla. 3d DCA 1982), which held that crimes occurring during an arrest the day after a robbery were sufficiently connected to the robbery to be charged in the same information.
In Parker, the defendant snatched a gold necklace from the victim. The next day, the victim returned to the scene of the crime, saw the defendant, and called the police. The police responded and approached the defendant, who ran away. The police caught the defendant and placed him in custody. A search incident to the arrest revealed cocaine in the defendant's possession.
The state charged Parker with robbery and two crimes that occurred the day after the robbery, possession of cocaine and resisting an officer without violence. The defendant argued that the trial court erred in failing to sever the cocaine and resisting charges from the robbery charge. The third district rejected the argument, holding that the offenses "were properly charged in a single information because they were connected in an episodic sense." Id. at 713. The court explained that the offenses on different days
were part of the same course of conduct and occurred within a period of a few hours at the very same location. The first offense led to and was connected with the other offenses; that is, the robbery and subsequent investigation led to the arrest and charges of cocaine possession and resisting arrest without violence.
Id.
The June 3 crimes in this case, which arose as a result of the investigation of the June 2 robbery, were connected in the same way that the crimes in Parker were connected. See also Robinson v. State, 656 So.2d 190, 191 (Fla. 3d DCA 1995) (holding that no reversible error occurred where trial court Judge of Comp. Claims-denied a pretrial motion for severance of robbery from resisting arrest, where the resisting charge was based on the defendant giving different names and dates of birth to the police when arrested). All the crimes were thus properly joined in the same information under rule 3.150(a).
Even where multiple charges are properly joined under rule 3.150(a), severance is nonetheless required before trial if it is "appropriate to promote a fair determination of the defendant's guilt or innocence of each offense." See Fla. R.Crim. P. 3.152(a)(2)(A). We find no abuse of discretion in the trial court's decision not to grant severance under rule 3.152(a)(2)(A). Rutherford's flight was probative of his identity as the person who committed the robbery, so such evidence would have been admissible in the robbery trial even if no other crimes were charged.
*215 In the light most favorable to the state, Rutherford knew that the victim and others in the neighborhood would be able to identify him; he was approached by the police two blocks from the crime scene and he was still wearing the same clothes he had worn during the robbery. Where there is a sufficient nexus between flight and the crime with which a defendant is charged, evidence of flight is relevant to infer consciousness of guilt. See Hertz v. State, 803 So.2d 629, 644 (Fla.2001); Thomas v. State, 748 So.2d 970, 982 (Fla.1999); Shellito v. State, 701 So.2d 837, 840 (Fla.1997) (admitting evidence of defendant's flight within twenty hours of a murder).
We briefly address two of Rutherford's other issues. The state offered Angela Nowell's post-arrest identification of Rutherford as "the guy that did the robbery" through the testimony of Investigator Valerio. Nowell testified at trial. Valerio's description of Nowell's statement was non-hearsay under section 90.801(2)(c), Florida Statutes (2004). See Stanford v. State, 576 So.2d 737, 739-40 (Fla. 4th DCA 1991).
There was no fundamental error in the variance between the date of the robbery, June 2, and the date alleged in the information, June 3. Because Rutherford did not raise this issue below, he argues that he was convicted of an uncharged crime. It is clear that Rutherford was charged with robbery with a firearm and the trial involved but one robbery. Rutherford relies upon uncharged crimes cases that are distinguishable; they all involve situations where the defendant was convicted of an uncharged offense, the elements of which did not appear on the face of the accusatory pleading. See, e.g., In re C.T., 582 So.2d 1245, 1245-46 (Fla. 4th DCA 1991) (minor charged by petition with attempted battery on a law enforcement officer was convicted of disorderly intoxication). That is not what occurred here.
AFFIRMED.
WARNER and MAY, JJ., concur.