Damoorgian, J.
Leon Reid (“Defendant”)' appeals his convictions for first degree murder and attempted first degree murder. The Defendant and his co-defendant, Phillips Pierre, were jointly tried on a two" count indictment on the same charges.[1] In this appeal, the Defendant argues that his convictions should be reversed because: (1) the trial court excluded the proffered testimony of two defense witnesses regarding an unrelated theft; (2) the prosecutor shifted the burden of proof to the Defendant during closing argument; (3) the trial court improperly denied the Defendant’s motion to suppress the surviving victim’s in-court and out-of-court identification of the Defendant; and (4) the trial court improperly allowed the surviving victim to testify that he identified the Defendant as one of the perpetrators in open court on four previous occasions.[2] We reject arguments (1) and (3) without further comment. As to the remaining points on appeal, we agree with the Defendant that the prosecutor improperly shifted the burden of proof to the Deféndant during closing and also hold that it was error to allow the surviving victim to testify that he identified the Defendant as the shooter in open court on four previous occasions. Furthermore, we conclude that these, errors were harmful. Accordingly, we reverse the Defendant’s convictions and sentence and remand for a new trial.
The State’s theory of the case was that the victims were in possession of a stolen car. The car’s owner along with several other individuals, including the Defendant and co-defendant, drove to the victims’ location to retrieve the vehicle. There, while brandishing firearms, the Defendant and the .co-defendant confronted both victims. A physical struggle ensued between all four individuals. During the struggle, the Defendant shot and killed one victim, and shot and severely injured the other •victim.
The defense’s theory of the case was that the stolen car’s owner, William Tibe, and another individual, committed the charged crimes during an attempt to retrieve the stolen car. To advance this theory, the defense sought to discredit the State’s eyewitnesses by suggesting that law énforcement improperly influenced or encouraged the witnesses to offer evidence implicating the Defendant and co-defendant.
The State’s Closing Argument
The Defendant argues that the prosecutor’s closing argument improperly shifted the State’s burden of proof by inviting the jury to return a guilty verdict based upon the Defendant’s failure to call William Tibe as a witness. To support his argument, the Defendant identified the following statements made by the prosecutor during his rebuttal argument: [3]
[Defendant’s counsel] actually said it’s William Tibe. He. said William Tibe could have been the person. You’ve *578 heard a whole lot about William Tibe. You heard from [co-defendant’s counsel] in opening statement about William Tibe—Mr. Tibe is going to tell you all about this and Mr. Tibe is going to tell you all about that.
Now, the burden of proof is on the State, I have to prove my case, Leon Reid, Phillips Pierre. But the Defense, though they have no burden, as you have seen in this case can call witnesses, and they did .... They could have called William Tibe.... They absolutely could have called William Tibe. They have the same availability to him as I do
[[Image here]]
They could have called him, but they didn’t. And yet, they tell you, [Defendant’s counsel] tells you, he could have been the one. Really? If he’s so important, [co-defendant’s counsel] said that Detective Toyota kept going back to him, he’s square one, he went back to Mr. Tibe, he went back to Mr. Tibe, [co-defendant’s counsel] went on and on about Mr. Tibe, and said you’re going to hear from Mr. Tibe. [Co-defendant’s counsel] told you all these things Mr. Tibe was going to tell you; and yet, you’ve heard none of them....
That’s his promise, he said you’re going to hear from him. And then in closing, to get up again and say this is William Tibe’s involvement, and William Tibe was wearing a burgundy skully? Follow the burgundy skully, [Defendant’s counsel] said it, Ms. Rhodus said it, follow the burgundy skully. Where the heck is it? Who wore it? Is it the only burgundy skully? Is that it? Is there only one white t-shirt in the world? There [were] seven people in the car, maybe seven of them are wearing burgundy skullies
[[Image here]]
What did Mr. Michael Gutierrez tell you about his trip? Phillips told him everywhere to go, all the commands came from Phillips, ‘cause Phillips is the one he knew, Phillips is in the front passenger seat. So, who is he speaking to between the homicide and the detectives? He’s talking to Phillips Pierre. But yet, [Defendant’s counsel] gets up and says obviously he talked to William Tibe. Really? Really? Could have called Tibe to say that, yeah, I spoke to him, I told him to leave me out of it....
So, they [the detectives] get information. Do they trust any information from William Tibe? Maybe they shouldn’t. Maybe that’s why he wasn’t called by either side.
“The courts of this state allow attorneys wide latitude to argue to the jury during closing argument.” Thomas v. State, 748 So.2d 970, 984 (Fla. 1999). Closing argument is an opportunity for the parties to summarize the evidence and advance all legitimate legal arguments, legal theories and logical inferences that can be derived from the evidence. Id. When reviewing a purported objectionable comment made during closing argument in a criminal trial, “[a] prosecutor’s argument should be examined in the context in which it is made. This is particularly so where invited by the nature of the defense.” Stancle v. State, 854 So.2d 228, 229 (Fla. 4th DCA 2003) (internal citations omitted); see also Austin v. State, 700 So.2d 1233, 1235 (Fla. 4th DCA 1997) (“The state has a right, and even a duty, to respond to the defense’s suggestion. To ignore it gives it credence.”).
However, the wide latitude afforded to a prosecutor during closing argument has its limits. A basic tenet of American criminal jurisprudence is that the state has the sole burden of proving a criminal defendant’s guilt. Jackson v. State, 575 So.2d 181, 188 (Fla. 1991). “To protect this tenet of due process, the general rule is *579 that ‘the state cannot comment on a defendant’s failure to produce evidence to refute an element of the crime, because doing so could erroneously lead the jury to believe that the defendant carried the burden of introducing evidence.’ ” Love v. State, 971 So.2d 280, 284 (Fla. 4th DCA 2008) (quoting Jackson, 575 So.2d at 188). Nevertheless, a prosecutor is allowed to comment on the defendant’s failure to produce evidence “when the defendant voluntarily assumes some burden of proof by asserting the defenses of alibi, self-defense, and defense of others, relying on facts that could be elicited only from a witness who is not equally available to the state.” Jackson, 575 So.2d at 188. “A witness is not equally available when there is a special relationship between the defendant and the witness.” Id.
The excerpts from the prosecutor’s closing argument are specifically directed at the Defendant’s failure to call William Tibe as a witness. By the prosecutor’s own admission, Tibe was equally available to the State and apparently had no special relationship to the Defendant. By suggesting to the jury that the Defendant should have called Tibe to the witness stand to support the theory that Tibe and not the Defendant committed the crimes, the State improperly shifted the burden to the Defendant to prove that the identity of the shooter was someone other than himself. Accordingly, the trial court erred in failing to sustain the Defendant’s objections on the ground of improper burden shifting.
We reject the State’s argument that the error in permitting the prosecutor’s argument was harmless. “The harmless error test ... places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.” State v. DiGuilio, 491 So.2d 1129, 1135 (Fla. 1986). The prosecutor’s multiple comments on the Defendant’s failure to call Tibe as a witness invited the jury to convict the Defendant for failing to present a case. Raupp v. State, 678 So.2d 1358, 1361 (Fla. 5th DCA 1996) (comments on defendant’s failure to call certain witnesses, impermis-sibly shifted the burden of proof and constituted harmful error).
Admission of Victim’s Prior In-Court Identifications of the Defendant
The Defendant argues that the trial court improperly permitted the State to question the surviving victim regarding four earlier instances in which he identified the defendant in court as a shooter. The State responds that this evidence was admissible as a statement of identification under Section 90.801(2)(c), Florida Statutes (2012).
Section 90.801(2)(c), Florida Statutes (2012), states in pertinent part:
A statement is not hearsay if the declar-ant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is ... [o]ne of identification of a person made after perceiving the person.
This Court has interpreted this statute as follows:
We believe that the typical situation contemplated by the code and the case law is one where the victim sees the assailant shortly after the criminal episode and says, “that’s the man.” Hence, the phrase “identification of a person made after perceiving him” refers to the witness seeing a person after the criminal episode and identifying that person as the offender.
Stanford v. State, 576 So.2d 737, 739-40 (Fla. 4th DCA 1991) (footnote omitted).
Based on the foregoing, we hold that Section 90.801(2)(c), Florida Statutes *580 (2012), applies to out-of-court identifications made close to the time the declarant perceived the identified person and not to prior in-court identifications. See id. The parties do not cite to any judicial decision and we are unaware of any case law where this hearsay exception has been applied to an earlier in-court identification. Accord-* ingly, the trial court should have excluded the testimony regarding the four prior in-court identifications.
The State argues that even if the prior in-court identifications were inadmissible, , .the error was .harmless. The main issue at trial was the shooters’, identities, Given the issues surrounding the surviving victim’s inability to identify the Defendant pre-trial as well as the issues concerning the victim’s seemingly inaccurate physical description of the Defendant, the improperly admitted earlier in-court identifications likely bolstered the credibility of the surviving victim’s in-court identification in this trial. Thus, the State has failed to prove beyond a reasonable doubt that the error did not contribute to the verdict. See DiGuilio, 491 So.2d at 1135.

Reversed and remanded.

Warner and Porst, JJ,, concur.

. See Pierre v. State, 156 So.3d 1101 (Fla. 4th DCA 2015) (unpublished table decisión).

. The Defendant and co-defendant were previously tried on these charges four times. A mistrial was declared in each of the previous trials.

.Defendant's counsel preserved this issue on appeal by properly objecting to all. of the prosecutor's comments.